(74 App. Div. 585.)

ROCHEVOT et al. v. ROCHEVOT et al.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. TRUSTS—CONTRACT TO CHANGE—SPECIFIC PERFORMANCE.

 By a will, testator left the income of all his property to his wife for life, and on her death to be divided equally among his five children. He appointed the wife and four of the children executors and trustees for the other child, who was incompetent, until he should become competent. The will directed that the property should retain its present form until such division. Three years after the testator's death the widow and competent children entered into a contract to then divide the property, separating out the share of the incompetent child, and the widow to act as sole trustee for him. The widow, two children, and the committee for the incompetent refused to perform the contract, and the other children sued for specific performance. Laws 1896, c. 547, provides, in section 128, that a power in trust is irrevocable; in section 137, that it is imperative; and in section 152, that the intention of the grantor or creator of the trust must be observed. Held, that the contract was in violation of the statute, and performance should not be decreed.

2. TRUSTEES—PURCHASE OF TRUST ESTATE.

 Such contract constituted, in effect, a purchase of the trust estate by the trustees in violation of their duties, and was unenforceable.

Appeal from special term, Erie county.

Action by Oscar P. Rochevot and another against Caroline Rochevot and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frank Brundage, for appellants.

A. C. Wade, for respondents Caroline Rochevot and ｜Matilda Mesinger.

James L. Quackenbush, for respondent Albert Rochevot.

SPRING, J. This action is for specific performance, to compel the enforcement of a written contract; and the dismissal was because the said agreement was invalid, and, if carried out, would defeat the will of the testator.

George Rochevot, a wealthy brewer of Buffalo, was the chief owner of the Lion Brewery, in that city. At the time of his death he owned 600 of the 1,000 shares which composed the capital stock of the corporation, and the residue of this was owned by his wife and four of his children, each owning 80 shares. He died in 1887, leaving a last will and testament, executed only three days before his death, and which was duly admitted to probate shortly thereafter. The thrift and sagacity which enabled him to accumulate his large fortune of over one-half million dollars appear prominently in his will. He first gave to his wife, Caroline, "the rents, profits, and other income" of his entire property during her natural life. After her death his property was to pass to his five children, to be equally divided among them. He next provided, in the fourth subdivision of his will, that if any of his children sold any of the shares of stock in said Lion Brewery before his death, and without his written consent, "or shall after my decease and during the lifetime of my wife, without the consent of my said wife and my other children, in writing, sell or dispose of any of the said 'stock, then he, she, or they shall be disqualified thereby from entering upon the duties of trustee, executor, or executrix of this, my last will and testament, and from acting as such trustee, executor, or executrix, and his, her, or their share or interest in my said estate shall terminate, and the same shall revert to, and form a part of, my estate, to be divided equally among those of my children who are faithful to me and obedient to my wishes." He nominated his wife and four of his children executors of his will. The remaining son was mentally incompetent, and the testator made his executors "trustees of the property, estate, share, and interest of my son Gustave C. Rochevot, and I give, devise, and bequeath to them the share of my son Gustave C. Rochevot in trust for him; they to continue as such trustees until my said son Gustave C. Rochevot shall recover from his present mental ailment, and become again competent to conduct and manage his own affairs, when they may, if they deem it advisable, pay to him or deliver to him his share or interest. They shall in the meantime make proper and careful provision for his maintenance, support, care, safety, and comfort." He gave his executors authority "to sell and convey or lease" any of the property, real or personal, and provided that they should "serve without bonds," and further directed that, in case any difference should arise "pertaining to the administration" of his estate, "a majority shall rule."

It is apparent that the testator, in the scheme for the distribution of his property, was controlled by two or three purposes: Primarily,

to insure a liberal income for his widow; secondly, to make certain that his unfortunate son was properly cared for, and his share kept in its integrity, to retain its value, or be augmented with that of his other children; and, thirdly, to keep intact the brewery stock, which was evidently the pride of his business ventures. The children did not work together harmoniously, and sought, in violation of the project of the father, to divide the property, and end the trusteeship for the son Gustave, whose property rights the father had so carefully interlinked with those of his other children. On the 10th of April, 1900, barely three years after the death of Rochevot, Sr., the widow and children, except the incompetent, entered into an agreement, the 'sweepingly destructive purpose of which, in hostility to the scheme of the testator, appears unmistakably in one of the recitals in a part of the agreement, reading as follows:

"Whereas, the parties to this agreement are desirous of determining the said life estate created by the provisions of said will, and the trusts created by said will, and to make a present distribution of the said estate between the parties entitled to the same on the terms and conditions hereinafter set forth."

By this agreement two of the children (Oscar, a son, and Mrs. Beck, a daughter) agree to sell, convey, and transfer to their mother and Albert and Matilda, for $160,000, all the property which they acquired from their father, with two minor exceptions, including what they might receive from the estate of their incompetent brother. The consideration of $160,000 was to be paid $45,000 in cash, $2,000 of which were in fact paid, and the remaining part of the purchase price in real estate, in the following manner: Appraisers chosen as provided in the agreement were to appraise the value of each parcel of land, and to complete said appraisal within 50 days, after which said Oscar and Mrs. Beck were to "select such pieces as they may choose, of the aggregate value of one hundred and fifteen thousand dollars ($115,000)." Conveyances were thereupon to be made by the respective parties to make effective the transfers, and each of the parties was to execute releases as executors of the said will, and as trustees of said Gustave thereunder; including, also, releases as directors, officers, and stockholders of the Lion Brewery. It was further agreed that "Caroline Rochevot may institute, at her own proper cost and expense, proceedings to procure, and procure, her appointment as trustee of the person and estate of this said Gustave C. Rochevot." This provision was further clinched by a covenant "that the parties hereto agree that such proceedings may be taken as shall be necessary to discharge said trustees under said will, and for the appointment of said Caroline Rochevot as trustee thereof; all expense of such proceedings, however, to be paid by the parties of the second part." The appraisal was taken conformably to the agreement, and the selection of the various tracts of land was made by the parties of the first part; but Mrs. Rochevot and her daughter declined to perform, alleging that they had been fraudulently induced to enter into the agreement, not supposing or realizing that the plaintiffs had the first right to make selection from the parcels of land at their appraised value. A committee was appointed

of said incompetent, and objected to the performance of said agreement.

It is quite obvious, if the agreement is carried out, the plan so carefully devised by the testator will be thwarted. It will terminate the life estate and the trusteeship created by the will, and result in a severance of the property of the incompetent, all of which were contrary to the purposes inducing the making of the will. By the real property law (Laws 1896, c. 547) the trust was irrevocable (section 128), imperative (section 137), and the intention of the grantor or creator of the trust must be observed (section 152). The parties to the action accepted the trust, and have proceeded in the performance of its duties, and may not now repudiate or disclaim the burdens which they have thus voluntarily undertaken. Brennan v. Willson, 71 N. Y. 502. Even if the parties possess the power to make this agreement, the court will not compel the destruction of this trust, and certainly not against the protest of some of the trustees and of the direct representative of the cestui que trust, and to aid a minority of the trustees to the detriment of the incompetent beneficiary. Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745; Oviatt v. Hopkins, 20 App. Div. 168, 46 N. Y. Supp. 959. The testator created a trust by which the aggregate judgment of the trustees was to be directed to its execution. By the plan evolved for the consummation of the agreement, this joint action and liability and interest are to be abrogated, and the widow alone is to be invested with the trusteeship, to carry out the purposes of the testator, with the trust property separated from that with which it was supposed to be inseparably united by him. The trustees, "if they deem it advisable," may pay or deliver to the incompetent his share in cash when he becomes competent to "manage his own affairs." He vested this discretion in the trustees, not in the widow, and this joint proprietorship is not to be torn asunder because some of the trustees desire it. Again, the performance of this agreement affronts the fundamental law pertaining to the administration of trust estates,—that a trustee is not permitted either directly or indirectly to purchase the trust property, or to manipulate it for his own benefit. Terwilliger v. Brown, 44 N. Y. 237; O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537. Nor is there any way to enforce this agreement specifically, and leave the trust estate intact. The pith of the agreement is the termination of the trusteeship as created by the testator, and the separation of the property so that a portion will be freed from the burden to the incompetent which he imposed upon it. Eliminate those provisions, and the agreement is incapable of recognition. The trial court exercised its discretion by declining to enforce the agreement, and we are not disposed to interfere with its judgment, especially as we are convinced it was exercised wisely.

The judgment should be affirmed, with the costs and disbursements of this appeal in favor of the respondents Caroline Rochevot and Matilda A. Mesinger. So ordered. All concur.