LOCKRIDGE v. RAAB et al.

(Supreme Court, Special Term, New York County.   June 15, 1910.)

SPECIFIC PERFORMANCE (§ 32*)—OBJECTIONS TO RELIEF—WANT OF MUTUALITY
OF CONTRACT.

   Where, after defendants agreed to sell plaintiff certain property, they
discovered that they could not convey a good title, and, on plaintiff
not electing to accept the title they had, sold the property subject to
mortgages thereon, when the amount realized was more than the contract
price, the property having appreciated in value in the meantime, plain-
tiff cannot recover the proceeds of such sale in equity; there being ab-
sence of mutuality of obligation, in that plaintiff would not have been
bound to take a less interest than the fee-simple interest agreed to be
sold, and defendants only being liable to return the deposit made, with
interest, and for the reasonable expenses incurred by plaintiff by reason
of the contract.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§
89, 90, 95; Dec. Dig. § 32.*]

   Action by Lawrence F. Lockridge against Hypolit J. Raab, some-
times called Hypolit Raab, and George J. Raab, sometimes called
George Raab, as executors.   Complaint dismissed.

   Douglas Mathewson (Edward J. Martin and George H. Taylor, Jr.,
of counsel), for plaintiff.

   Kellogg & Tappen, for defendants.

   GIEGERICH, J.   The plaintiff seeks a judgment declaring that the
defendants hold in trust for his benefit the sum of $3,671.84, now in
their hands, derived from a sale under mortgage foreclosure of cer-
tain property which the plaintiff had previously contracted to purchase
from them as executors.   The will of John Raab, under which the
defendants are acting as executors, contained the following provision:

   "First. Whereas, my son John Henry Raab is now indebted to me in the
sum of $10,279 for money loaned by me to him at various times, and notwith-
standing the fact that my said son John has gone through bankruptcy and
has been discharged, no part of the above mentioned amount has been paid
to me by my said son or by any one on his behalf.   If, however, my said son
shall at any time previous to my death pay to me, on account of the said
amount, the sum of $4,279, I give and bequeath to him the sum of $6,000,
being the balance of said indebtedness, and order and direct my executors
hereinafter named to execute and deliver to him a proper release for the
same, and at the same time to take from him a proper voucher for the said
$6,000 allowed him on account of his indebtedness to me.   If, however, my
said son shall not have paid to me previous to my death the whole or any part
of the aforesaid sum of $4,729, being the balance of his indebtedness to me,
I order and direct my executors to sell the house and lot, now owned by me,
situate in Far Rockaway, Queens county, New York, and to give a good and
sufficient deed of conveyance for the same, and to apply the proceeds derived
from the sale towards the settlement of all claims against the property and the
liquidation of the $4,279, being the balance as hereinbefore stated of my son
John's indebtedness to me.   Should the proceeds from the sale of the said
house and lot exceed the sum of $7,979, which last mentioned sum is the
amount of my said son's indebtedness to me, together with the amount due
for principal, viz., $3,700, of a mortgage now on said house and lot, I order
and direct my executors to pay to my son John, or to his heirs, the amount
they receive in excess of the said sum of $7,979."

At the time of his death, on June 3, 1904, the testator, John Raab, was the record owner and apparently seised and possessed in fee simple absolute of the real estate and premises in question. John Henry Raab, the son referred to in the portion of the will above cited, did not previous to the death of his father pay the whole or any part of the said sum of $4,279. On the 23d day of April, 1906, the defendants, as "executors of the estate of John Raab, deceased," entered into a contract in writing to sell the plaintiff the property in question for the sum of $6,500. Five hundred dollars was paid at the time the contract was signed. When the title was searched it appeared that the power of sale contained in the will was valid only in the event that the testator's son, John Henry Raab, had not paid anything on account of the debt mentioned in the will, and that there was no competent evidence of the nonpayment of the sum mentioned, and accordingly the title insurance company engaged to search the title refused to pass the title as marketable or to give a policy of title insurance. On the 15th day of May, 1906, the date set for closing the title, the plaintiff was ready, able, and willing to perform on his part; but the defendants were unable to deliver a good deed and failed to produce any competent evidence that the said debt of $4,279 had not been paid in whole or in part previous to the death of the testator.

On the 17th day of December, 1906, the defendants commenced an action against the said John Henry Raab, in which they alleged that a certain deed made by John Henry Raab and Anna L., his wife, on or about the 2d day of January, 1889, to the said John Raab, deceased, was taken as security for the payment of the money then due and thereafter to grow due from the said John H. Raab to the said John Raab, deceased, and that there was due to them as executors a total indebtedness of $18,544.97. Such proceedings were thereafter had in the action last mentioned that on the 19th day of March, 1907, a judgment was entered declaring the deed to be a mortgage, and that the amount due thereon was the sum of $5,969.67, with interest from March 1, 1907, and further directing that the premises be sold at public auction, subject to two mortgages aggregating $3,700. The mortgages referred to in the judgment mentioned were the same mortgages as those referred to in the contract of sale. On the 14th day of May, 1907, the premises were sold at public auction, the plaintiff becoming the purchaser, for the sum of $10,050. On the 23d day of April, 1906, the time when the contract of sale was made, the purchase price therein named, $6,500, was a fair and adequate consideration; but thereafter, and prior to the date when the foreclosure sale took place, the premises, with other real estate in the neighborhood, had increased rapidly in value. After paying the various expenses of the sale, and various other sums directed to be paid in the judgment, the referee paid over to these defendants (the plaintiffs in the foreclosure action) the sum of $5,888.17, the net result of the transaction being that they received $3,671.84 more than they would have received had their contract with the plaintiff been carried out. Subsequent to the entry of the judgment of foreclosure and sale the plaintiff notified the defendants that he would not accept a return of the deposit paid as a part of the purchase price, together with his disbursements for the examination of

the title, and that in the event that either of the defendants, or any one representing them, should purchase the property at the sale, he would ask the defendants to carry out their contract with him. On June 11, 1907, the defendants tendered the plaintiff the $500 deposited, with interest, together with his reasonable fees for examining the title, which he refused.

The plaintiff relies upon the legal principle that immediately upon the execution of the contract of sale the vendors became trustees of the property sold for the benefit of the vendee (Williams v. Haddock, 145 N. Y. 144, 39 N. E. 825; Beckridge v. City of North Tonawanda, 171 N. Y. 292, 64 N. E. 6), and that, holding it as trustees for the plaintiff's benefit, they could not deal with it to the advantage of the estate they represented (O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537; Rochevot v. Rochevot, 74 App. Div. 585, 77 N. Y. Supp. 788). The principle above referred to cannot be held to apply to the facts in the present case. If the plaintiff had been satisfied with such interest as the defendants had in the property in question, and had elected to take that interest in lieu of the fee which he had contracted for, then it may be they would have been trustees for his benefit, and he would have been entitled to whatever was obtained by them from the property. There is nothing to show, however, that he made any such election. On the contrary, so far as can be judged from the facts appearing in the stipulation, after the defendants discovered that they could not give a good title, they, quite independently of the plaintiff and his contract, took such steps as were available to them to have their interest adjudged as something less than a fee and to realize upon it. If the proceeds of the foreclosure sale had been less than the contract price, instead of more, the plaintiff could not have been held liable for the difference. There being such an absence of mutuality of obligation, it would manifestly be unfair to allow the plaintiff, after the event has shown that there has been an increase in value of the property contracted for and an increase in value of the vendors' interest in the same, to come in and elect to take the proceeds of such interest. So far as the record shows the defendants made the contract in good faith, and in such a case they are liable only for the return of the deposit, with interest, and for the reasonable expenses incurred by the plaintiff. Cockroft v. N. Y. & Harlem R. R., 69 N. Y. 201; Empire Realty Corp. v. Sayre, 107 App. Div. 415, 421, 95 N. Y. Supp. 371.

As this action was brought in equity, and as the plaintiff has an adequate remedy at law for the return of his deposit and the recovery of his expenses, the complaint should be dismissed, with costs. A decision and interlocutory judgment, upon the usual notice of settlement, may be submitted.