SHIRLEY
v.
SHIRLEY.

SHIRLEY *v.* SHIRLEY and Another.

The statute of frauds does not require that an agreement for the sale of real estate should be signed by both parties. It is sufficient if it have the signature of the party sued.

If by such agreement, the making of the title and the payment of the purchase-money are to be concurrent acts, neither party can sustain a suit on the agreement without having first performed or offered to perform his part of it.

Nor can a party to such contract rescind it without the other's consent, unless there has been an offer of performance on his part, and a refusal to perform by the other.

A vendee of real estate has a lien thereon for the money paid, if the vendor refuse to convey; and the lien continues against a subsequent purchaser with notice.

Thursday,
July 17.

APPEAL from the *Orange* Circuit Court.

SULLIVAN, J.—Bill in chancery to enforce a vendee's lien. The following facts are stated in the bill: The complainant and one *James Hudelson,* who died pending the suit, purchased from *Charles Shirley* a tract of land lying in *Orange* county, and entered into a contract in writing under seal dated *October* 4th, 1838, signed by *Charles Shirley,* by which the latter acknowledged that he had received from the former 382 dollars and 42 cents, part of 1,600 dollars which they, *Shirley* and *Hudelson,* had agreed to pay to *Charles Shirley* for the land mentioned in the contract, and which is described in the bill, and which *Charles Shirley* was to convey to them by a general warranty deed free from all incumbrance. In the month of *December* following, the purchasers paid to *Charles Shirley* the further sum of 109 dollars and five cents in part payment of said land. The bill then states that the complainants, on, &c., offered to pay the balance of the purchase-money and demanded a deed, but defendant, *Shirley,* refused to comply with his contract, and afterwards sold and conveyed the same land to his co-defendant *George Monicle,* and emigrated to the state of *Illinois;* that *Monicle,* when he purchased, had notice of the previous purchase of the land by the complainants, and that they had paid a large portion of the purchase-money. *Charles Shirley* and *Monicle* are made defendants to the bill, and the prayer is that the defendant, *Charles Shirley,* may be decreed to pay to the com-

plainants the sum of 491 dollars and 47 cents, the amount paid by them as part of the purchase-money aforesaid, and that the complainants have a lien on the land to secure the payment.

*Charles Shirley*, in his answer, admits the sale of the land and the payment of a part of the purchase-money as stated in the bill. He denies that the purchasers offered, at any time, to pay the residue of the purchase-money, or in any way to comply with their contract; but says they refused to do so, and he thereupon sold the land to *Monicle*, &c.

*Monicle*, in his answer, admits that he purchased the land described in the bill from *Charles Shirley* for the sum of 1,600 dollars; that he paid him 500 dollars in cash, removed an incumbrance on the land to the amount of 200 dollars, and executed his notes for the balance. He admits that, before he contracted for the land, he was informed that *Jocob Shirley* and *Hudelson* had purchased it, but had failed to pay for it; that he called upon them before he purchased, and informed them that he contemplated purchasing the land, and requested to be informed of the claim they had upon the land, &c., and that he was informed by *Jacob Shirley* that the purchasers wanted their money to be refunded to them and they would be satisfied, &c.; that *Jacob Shirley*, one of the complainants, expressed a willingness to take the note of him, the said *Monicle*, in discharge of the claim for said purchase-money; and that the respondent understood that *Charles Shirley* had afterwards tendered to the complainants the note of *Monicle* for the sum of 500 dollars, &c.

There were replications filed to the answers, and depositions taken.

*Henry K. Neff* swears that in harvest time, 1839, he went with *Monicle* to see *Jacob Shirley* and *Hudelson*. He says *Monicle's* object was to inquire into the difficulty between *Jacob* and *Charles Shirley* respecting the land. The witness then states the same facts substantially that are related by *Monicle* in his answer, with this addition, that *Jacob Shirley* told him that "he considered he had a lien on the land," and if the "arrangement" (referring to the note of *Monicle*) was not made, he would hold on to the land. *J. P. Hungate's* testimony sustains the answer of *Monicle*. He was

present at the above recited conversation, and says that *Jacob Shirley* expressed a willingness to give up the land, but said he must have his money back and six *per cent.* interest. *Jesse Toliver* says, that he heard *Charles Shirley* say that he was to let the complainants have a note of 500 dollars. *C. Shirley* requested the witness to go to *J. Shirley* and *Hudelson* and inquire whether they would take said note. They said they would not take the note without the interest on the money they had paid to *Charles.* This occurred in the latter part of the summer or in the early part of the fall of 1839. A witness swears that *Charles Shirley*, in the year 1839, held a note on *Monicle* for 500 dollars. Another witness says that he heard *Jacob Shirley* tell *Monicle* in the harvest field, that if he, *Monicle*, would pay to him the money he had paid to *Charles Shirley* for the land, with interest, he might have the land. *Monicle* said he would determine by the next day, and *Jacob Shirley* said that if *Monicle* did not give his note to him, *Jacob Shirley*, he would buy a law suit. Witness says he was at *Shirley's* the next day, and *Monicle* did not come to *Shirley's*, &c. Two other witnesses, in their depositions, adopt the statements of the last-named witness.

On the foregoing facts the Court, at the final hearing, dismissed the bill.

It has been seriously questioned whether the specific performance of a contract would be enforced, where both the parties were not bound to the performance of it by having signed the agreement, on the ground of a want of mutuality in the remedy. *Lawrenson* v. *Butler*, 1 Sch. and Lef. 13. The doubt however has been abandoned, and the Courts have, by numerous decisions, settled the doctrine that a contract signed by the party to be charged, according to the statute of frauds and perjuries, may be enforced by the other. *Flight* v. *Bolland*, 4 Russ. 298.—*Palmer* v. *Scott*, 1 Russ. & Mylne, 391.—*Martin* v. *Mitchell*, 2 Jac. & Walk. 419.—*Ld. Ormond* v. *Anderson*, 2 Ball & Beat. 363 (1.)

The contract between the vendor and the purchasers in this case, was evidently one where the acts to be performed by them were concurrent. The purchasers were to pay 1,600 dollars for the land, and the vendor was to make a

May Term,
1845.

SHIRLEY
v.
SHIRLEY.

good title. There is nothing in the terms of the contract, which shows that it was the intention of the vendor to convey before the payment of the purchase-money; and unless it clearly appeared that such was the contract, a Court of equity would not compel him to part with his land before he was paid for it. Nor would a Court compel the purchaser to pay his money before he received a title. Neither party, therefore, could compel a performance by the other until he had performed, or offered to perform, his part of the contract. It follows that neither party had a right to rescind the contract, without the consent of the other, until by an offer to perform on his part, the other party had refused. If the purchasers had tendered the purchase-money within a reasonable time and demanded a deed, and it had been refused, they might have considered the contract at an end; and so, if the vendor had tendered a deed and demanded the purchase-money and it had not been paid, he might have considered the contract as rescinded. But if either party abandoned the contract without doing all that the law required of him, he is in default.

There is no evidence that *Charles Shirley* tendered a deed to the purchasers, and demanded the purchase-money, or any thing equivalent to it, before he sold to *Monicle*. The sale, therefore, cannot affect the equity of the complainants if *Monicle* had notice of it, and if they did no act which destroyed it. *Monicle* admits in his answer that, from a conversation he had with *J. Shirley* and *Hudelson* on the subject, he knew they had a claim on the land. In that conversation they consented that *Monicle* might purchase from *Charles Shirley*, but we think the weight of the testimony is that they informed *Monicle*, that they would claim a lien on the land for the money they had paid with interest, and that unless *Monicle* would pay or secure to them that amount, they would seek to enforce their lien. That did not amount to an abandonment of their lien; it rather asserted it. *Monicle*, therefore, purchased with a full knowledge of the complainants' equity, and the land, in his hands, is subject to the lien claimed by the bill. A vendee has a lien on land purchased by him for the purchase-money, or any part of it, paid by him, if the vendor refuses to

May Term,
1845.

convey, and this lien attaches to the land in the hands of a subsequent purchaser with notice. 1 Sugd. on Vend. 344.— Coote on Mortg. 248, and cases cited.

From the view we have taken of the case, it follows that the Court erred in dismissing the bill.

*The Court* reversed the decree, and rendered a decree for the complainant conformably to the above opinion.

*H. P. Thornton, J. Collins, W. Quarles,* and *J. H. Brad-ley,* for the appellant.

*W. A. Porter,* for the appellees.

(1) The cases cited in the text show that Courts of equity consider contracts for the sale of land valid, under the statute of frauds, though signed only by the defendant. The doctrine is the same in Courts of law. *Laythoarp* v. *Bryant,* 2 Bingh. N. C. 735.—*Barickman* v. *Kuykendall,* 6 Blackf. 21.