## FREDERICK E. GIBERT v. ALOIS PETELER AND OTHERS.

*Deed—Condition—Incumbrance—Ejectment—Improvements.*

A condition in a deed of assignment restricting the assignee from building on a certain portion of the premises, is such an incumbrance as will excuse a party from completing the contract who has purchased without notice of such condition.

A party for whose benefit such condition was inserted has an easement in said premises, and may maintain a suit to enjoin a party from violating such condition.

CLERKE, J.—This action was brought to recover a block of land at New Brighton, county of Richmond, and sundry articles of furniture which the Plaintiff, on the 3d of March, 1858, contracted to sell and convey to the Defendant, Peteler, for $57,500.

The Defendants refused to accept the property and complete the contract, on the ground that the Plaintiff is unable to give a good title to the block of land.

They also set up that, by reason of this failure on the part of the Plaintiff, and of the expense of various improvements upon the premises, made by them in conformity with the contract, they were entitled to have these expenses paid by the Plaintiff, as a condition of his recovery, and to have them declared a lien upon the premises.

There have been two trials—one before three referees, who found in favor of the Plaintiff; but upon appeal to the General Term, the judgment was reversed.

The second was before one referee, who, in conformity with the decision of the General Term, decided in favor of the Defendants. On appeal to the General Term, the judgment was affirmed.

From that judgment of the General Term, this appeal is taken by the Plaintiff.

The objection to the title arises from a covenant in a deed, dated 30th October, 1846, made by one Bartlett and wife to

Samuel M. Fox. Fox covenanted with Bartlett, for himself, his heirs and assigns, not to erect, or suffer to be erected on the premises, any structure or dwelling of any kind whereby the view or prospect of the bay, from any part of the dwelling-house of John C. Green, shall be obstructed, or impaired in any manner or degree whatever. In case of breach, the premises were to be forfeited to Bartlett, for the use of Green, his heirs and assigns.

Bartlett had received from one Davis a deed of the premises, on the 25th of September, 1846. The consideration was paid by said Green, at whose request the deed was taken in the name of Bartlett.

There were several intermediate conveyances prior to the 3d of March, 1858, when the premises were conveyed to the Plaintiff by Victor de Launay, and several other joint owners.

All the conveyances were duly recorded. It is not shown that the Plaintiff had express notice of the covenant referred to, but as the conveyance under which he holds refers to a deed in which it is contained, and as the conveyances are all recorded, it must be assumed that he had notice of it.

The referee finds that the restrictive covenant greatly lessens the value of the Bartlett strip for general purposes, but that it is not essential to the use and enjoyment of the other portions of the property, and that a just amount of compensation, on account of the restriction, might be awarded to the Defendants by proportionate abatement of the purchase-money, and of the interest paid by the Defendants.

He finds that the dwelling of Green, which was then two stories high, was raised, in 1857, another story of about ten feet. The site of the former scuttle on the roof, and of the points of vision therefrom towards the bay, as it formerly existed, is now in the interior of the house, surrounded by walls. By the addition of the third story, an additional view towards the bay was afforded from the windows in the third story, and an increased view from the roof; and in the line of view from the third-story windows to the bay, over the premises in question, any erection thereon to the height of from seven to ten feet would interfere with and interrupt such view.

The Plaintiff was unable to obtain a release of the land from the restriction, and the Defendants, Hatzfeld & Kober, on the trial elected to rescind the agreement between Plaintiff and Peteler (they being assignees thereof), and recover the damages to which they are entitled against the Plaintiff.

The referee held, as matter of law, that the restriction in the deed from Bartlett to Fox could be enforced on the part of Bartlett by entry, or, on the application of Green, by injunction; and, therefore, that the Plaintiff's title was not good; that the Defendants were entitled to rescind the agreement, and recover their damages against the Plaintiff, which were adjusted at $23,831.26, and were declared to be an equitable lien upon the premises, the payment of which by the Plaintiff is a condition precedent to their recovery, and that until payment the Defendants were entitled to possession.

The principal question for our consideration is,—Was the restrictive clause in the deed from Bartlett to Fox valid? The counsel for the Plaintiff maintains that in no case can any reservation in a deed, either as a condition or as a covenant, be made in favor of a stranger; and that Green, in whose favor this restriction was made, was a stranger.

The counsel maintains that it is not a condition, and refers us to Coke upon Littleton; that the words employed do not constitute a condition, and that such words as "upon condition," or "provided always," must be used in order to make a condition.

But nothing of the kind can be found in that commentary. Undoubtedly, in the note 204a (§ 330), it is said that "some words, of themselves, do make a condition, and some others do not, of themselves, make a condition;" but, it is added, "without a conclusion and clause of re-entry"—that is, without a clause of re-entry or forfeiture, the words "upon condition," or "provided always," or some equivalent words, must be employed.

The words in the clause of the deed in question are, that the land shall be forfeited to the grantor, if the grantee, his heirs or assigns, should erect the prohibited construction. This is language as positive as could possibly be employed to make the land

described in that deed an estate upon condition; and it makes it no less valid because the thing prohibited is declared to be for the protection or convenience of a person occupying adjoining land.

No principle is better established now than that even under a mere covenant in a deed providing against certain constructions which may be noxious or offensive to neighboring inhabitants in the breach of the covenant, those who have suffered from it, though not parties to the deed, would be afforded relief in equity. Of course, they could not sue at common law on the covenant; yet, as the covenant was intended for their benefit, it would be deemed to have given them an easement in the land, and a Court of Equity will interpose to give them relief by injunction against its infraction.

The books abound with cases of this kind. The principal in our own courts are Barrow *v.* Richard (8 Paige, 351), and Brouwer *v.* Jones (23 Barb. 153). It is very possible that, under the rule in Spencer's case (5 Coke, Pt. 6, p. 9—contained also in Smith's Leading Cases, v. 1, p. 129, Phil. ed., 1866), if this provision was merely a covenant, containing no words of re-entry or forfeiture, that no relief, at a remote period in the history of our law, would be afforded, even by a Court of Equity. In that case, a lessee by indenture covenanted for himself, his executors and administrators, that he, his executors or assigns, would build a brick wall upon part of the land demised. Held, if the lessee assigns his term, such covenant does not bind his assignee, and as the lessee promised to do something in relation to the land, it was something which was merely collateral.

Hence, perhaps, under the rule in that case, a mere promise *not* to erect a building on a part of the land granted, not relating to a thing in esse, would be considered merely collateral, and not binding on an assignee.

Although Spencer's case, and the admirable notes and comments to be found in this recent edition of Smith's Leading Cases, by Mr. Smith and the American editors, contain a fund of learning of great practical utility in the present day, yet it is evident that the case has no application to the present subject, whether

we regard the provision in the deed as a covenant merely, or as a condition.

That it is the latter, and, therefore, subjects the land to a forfeiture if the prohibited thing should be done, I think there can be no reasonable doubt.

The referee was, therefore, substantially correct in finding that the title tendered by the Plaintiff was not a good and sufficient title. The Defendants contracted to purchase the entire property, and they cannot now be compelled to take a part of it, even if proportionate compensation were awarded for the part in respect to which the title is defective.

In the language of Story, "A party contracting for the entirety of an estate will not be compelled to take an aliquot part of it;" referring to Dalby *v.* Pullen (3 Sim., p. 29).

We are next to consider whether the referee was correct in deciding that the Defendants had an equitable lien on the land for the money which they had expended in improvements on it.

We must bear in mind that the Defendants went into possession under contract, which required them to expend $20,000 upon the premises, in permanent improvements, as a necessary condition to entitle them to a deed, and, accordingly, within the time required, they expended that amount in permanently improving the property, upon the faith that, at the appointed time, the Plaintiff would give a sufficient title.

In The Attorney-General *v.* Baliol College (9 Mod. R. 407), Lord Chancellor Hardwicke held that where a lease was good at law, equity will not set it aside without allowing for lasting improvements. But in Putnam *v.* Ritchie (6 Paige, 390) the Chancellor of this State refused to make such an allowance for improvements in favor of a purchaser who had made his expenditures for improvements in good faith, supposing that he was the owner, under a conveyance which turned out to be void. He intimated, however, that his opinion would be different in a case where the legal title was in the person who had made the improvements in good faith, and the equitable title in another, who was compelled to resort to equity for relief.

. This hypothetical case would be very similar to that decided by Lord Hardwicke. In Bright *v.* Boyd (1 Story's R., p. 478), in an action for rents and profits after a recovery upon legal title, the owner was compelled to allow a deduction, in favor of a bonâ fide possessor, of the amount expended in good faith for permanent improvements.

This, to be sure, is not exactly the case before us; but the opinion delivered by Mr. Justice Story unequivocally sustains the principle adopted by the Court below, and maintains, as he asserts in his Equity Jurisprudence (2 Story's Eq. Jur., §§ 1234, 1237), that " where a party lawfully in possession under a defective title has made permanent improvements, if relief is asked in equity by the true owner, he will be compelled to allow for such improvements."

King *v.* Thompson (9 Peters, 204), in the U. S. Supreme Court, is perhaps more in point. The Plaintiffs were the vendees, who filed a bill for a specific performance, the legal title being in the Defendants. The specific performance was denied, on account of uncertainty in the contract as to the person in whom the title was to be vested ; but the vendees were allowed their expenditures, and the premises were directed to be sold for the purpose of repaying them.

The case before us is stronger than any of those to which I have referred. The Defendants were lawfully in possession, and not only thought that the Plaintiff could fulfil his promise, but they incurred the expenditure in exact accordance with the requirements upon which the Plaintiff insisted, and which he provided for in the contract.

I have no doubt, therefore, that the conclusions of the referee, relative to the part as well as to the whole of the case, are correct.

The judgment should be affirmed, with costs.

Affirmed.

JOEL TIFFANY,
State Reporter.