ABIGAIL H. BENNETT, Respondent, *v.* H. LOUISA AKIN, Appellant, Impleaded with ELIHU G. AKIN and Others.

*Will — charge of legacies upon land — the lien thereof, is superior to the claim of an owner for improvements — right to have a home and support on a farm — duty of the owner.*

A testator gave a life interest in a farm owned by him to his widow, with remainder to his son Edward, charged, in case the personal property was insufficient, with the payment of $500 to each of the four daughters of the testator one year after the death of the widow, if the daughters were then twenty-one years old, if not, then on their respectively arriving at that age. During the lifetime of the widow Edward conveyed his interest in the farm to his brother Elihu, who rebuilt the dwelling-house, which had been burned, and rebuilt fences, at a cost of $1,412.39. He also received $819.13 from a railroad company, as damages for a portion of the farm taken by it.

In an action by the daughters, brought after the death of the widow to have the farm sold to satisfy the charges thereon:

*Held,* that the lien of the legatees for the amount of their legacies was superior to that of Elihu for the amounts expended by him in improving the place, even though its value was thereby actually increased to the extent of the expenditure.

The testator also, by his will, gave a home and support on the farm to each of his daughters so long as they remained single. After they became twenty_ one and had received their legacies they were to have such support, on paying the interest of $500, as long as they stayed and remained single.

In November, 1879, and after the death of the widow, one of the daughters, who was still unmarried, demanded of Elihu her home and support. To this he replied, stating the destruction of the house by fire, and offering her what was provided by the will, as soon as the new house should be finished, and offering, in the meantime, to support her at one or two other places near the farm. To this offer she made no reply. In this proceeding she sought to have the value of the home and support which she was entitled to receive charged upon the land.

*Held,* that no recovery could be had therefor as Elihu was under no obligation to do anything more than he had offered to do when the demand was made.

*Held,* further, that the lien of the pecuniary legacies to the four daughters was entitled to priority over the lien for the amount due to the unmarried daughter for the failure of Elihu to furnish her the support provided by the will.

Appeal from a judgment, entered upon the report of a referee.

*Orin Gambell,* for H. Louisa Akin, appellant.

*Robert H. McClellan,* for the respondent.

*Levi Smith,* for Elihu G. Akin.

LEARNED, P. J.:

This action is brought to have a certain farm, formerly the property of James Akin, deceased, sold to satisfy certain charges thereon under his will, and to determine the rights of the parties interested. The defendant H. Louisa Akin (or Hannah Akin, as she is named in the will), appeals from the judgment entered on the report of the referee, and claims a different distribution of the proceeds.

The will gave a life interest in the farm to the widow, remainder to testator's son Edward, charged with the payment of $500 to each of four daughters, if the personal property was insufficient, payable one year after death of widow, if they were then twenty-one; if not, then on arriving at twenty-one. He gave a home and support on the farm to each daughter so long as they remained single. After they became twenty-one and had received their legacies, they were to have such support, on paying the interest of $500, as long as they stayed and remained single. Edward Akin conveyed his interest in the farm to Elihu G. Akin, in 1875. The widow died October 14, 1879, all the daughters being then over twenty-one. All except H. Louisa Akin married during the life of the widow. In 1872 the dwelling-house on the farm burned. There was no place there in which an occupant could live until Elihu, in the winter and spring of 1879 and 1880, rebuilt and repaired a house. He also rebuilt fences, etc. The whole expenditure was $1,412.39. He received in 1880 from the Troy and Boston Railroad Company $819.13 damages for land taken. The improvements made by Elihu increased the value of the farm to the extent of the expenditure. On the 6th of November, 1879, H. Louisa Akin demanded of Elihu Akin her home and support. To this demand he replied, stating the destruction of the house by fire, offering her what was provided by the will, as soon as the new house should be finished, and meantime offering her support at one or the other of two places near the farm. She made no reply to this and never made any demand for her support afterwards. The referee held, first, that Elihu was entitled to be paid for his expenditure aforesaid, less what he had received from the Troy and Boston Railroad Company.

These legatees had severally a charge on the farm for their

pecuniary legacies. This charge was like a mortgage. Now, if the house on a mortgaged farm were to burn down, and the owner of the equity of redemption were to rebuild, he would not be entitled to be paid for the expense of rebuilding in preference to the mortgagee. It is said that the improvements have increased the value. That may be, and Elihu will receive that increased value by the greater price for which the property will sell. But he cannot put the expense of his improvement ahead of the lien of the legacies. Assume that the farm alone was enough to pay the pecuniary legacies. Then those legatees were secure without any rebuilding. If they doubted the security they could have insured their interest in the premises.

The case of *Gibert* v. *Peteler* (38 N. Y., 165) does not apply. A vendee in possession under a contract for sale was allowed for improvements, when the vendor failed to convey. The vendee lost all title to the land by the vendor's failure to convey, and therefore was allowed a lien for improvements, which had increased the value of the vendor's land. Here it is Elihu's land, not the land of the pecuniary legatees, which has been increased in value. These legatees have only a lien, and that lien cannot be taken away by him.

The referee held that, after the repayment aforesaid to Elihu, the pecuniary legacies of $500 should be next paid; then the amount due H. Louisa Akin for her home and support. She insists that the legacy of a home and support is demonstrative, and should have preference over the pecuniary legacies. The referee has awarded her $1,822.10, for the value of her support from November 6, 1879, to May 6, 1885; that is from the time of the aforesaid demand. This shows that the referee considered that demand and her reply thereto as a refusal which entitled H. Louisa Akin to a money compensation. We do not so regard it. At that time there was no house on the farm, and Elihu offered the next best thing. It could not be that he would become liable to pay money for her support elsewhere, when by accident the house had burned, and there was no place for her on the farm. She did not accept the offer and made subsequently no other demand. There was no obligation on Elihu to support her elsewhere than on the farm. So the will expressly provides. And it may be easy for a farmer to give a home

and support on his farm, while it would be a great burden to pay in money for support elsewhere. (*McKillip* v. *McKillip*, 8 Barb., 552; *Converse* v. *McArthur*, 17 id., 410; *Hawley* v. *Morton*, 23 id., 255.) In *Borst* v. *Crommie* (36 N. Y. Sup. Ct.; 19 Hun, 209) it will be seen that until there is a refusal to support at the place designated in the·will, the legatee has not a right of action.

Now it appears that H. Louisa lived on the farm until the house was burned. She then went away, and subsequently she has lived with her brother James at Cambridge, and has there taken charge of the household work. Elihu, the owner of the farm, is her brother; and nothing is shown indicating that she might not pleasantly and comfortably live with him. It should be clearly shown that Elihu was not willing to give her a home and support on the farm, or that the home and support he offered was in some way unsuitable, before she should burden the estate with a large sum for the value of a home, which she has obtained elsewhere.

In the next place, H. Louisa insists that the value of her past support should be paid before the pecuniary legacies. As the opinion which we have already expressed must require a new trial, and as we cannot tell what may be there shown, it is perhaps unnecessary to decide this question. But on the whole we are of the opinion that the pecuniary legacies should be first paid. One reason for this is that the testator evidently desired to treat his daughters equally. He wished that each should have $500 and a support until married. Now if the compensation for the failure to give this support is to be first paid, it may take away all the avails, leaving nothing for the pecuniary legacies. Taking the whole will into consideration, we think that this inequality was not intended. Of course, the testator expected that the home would be actually afforded; not that the farm would be sold.

And it must be noticed that the pecuniary legatees are also those for whom the support is provided. So that H. Louisa stands in the same position with her sisters. Each was to have support till she was married and $500. It is not to be supposed that the others were to loose their $500 because they were soon married; and H. Louisa has remained single. We think that a new trial is necessary.

Judgment reversed, new trial granted, referee discharged, costs to abide event.

LANDON, J., concurred.

Present — LEARNED, P. J., and LANDON, J.

Judgment reversed, new trial granted, referee discharged, costs to abide event.