(117 App. Div. 505)

OCCIDENTAL REALTY CO. v. PALMER.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. VENDOR AND PURCHASER—REMEDIES OF PURCHASER—LIEN.
    In case the vendee in a contract for the sale of land is entitled to recover moneys paid by him under the contract because of the inability or refusal of the vendor to perform, he has an equitable lien for such moneys, and may proceed against the land irrespective of his remedy at law.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 985–990.]

2. SAME.
    The lien cannot be extended so as to cover the costs of examining the title, though it is an item of the vendee's damages.
        Patterson, P. J., dissenting.

Appeal from Special Term, New York County.

Action by the Occidental Realty Company against Washington Palmer. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, HOUGHTON, and SCOTT, JJ.

Isaac N. Miller, for appellant.

Leo G. Rosenblatt, for respondent.

SCOTT, J.   Many, and perhaps most, of the objections to the title urged by plaintiff are insufficient to justify its refusal to perform, but I think there is a practical impossibility of accurately fixing the lines of the land proposed to be conveyed, and the difficulty arising therefrom is accentuated by the fact that there appear to be encroachments upon the property.   I think, therefore, that the title in its present condition may fairly be said to be so far unmarketable that the vendee is not bound to accept it.   The serious question in the case is as to the relief to which plaintiff is entitled, and upon this question the appellant contends for a proposition which is contrary to the rule which has heretofore prevailed in every jurisdiction in which that branch of the law which we know as equity prevails.   The rule which has obtained for many years in this country and in England is that the purchaser of land by an executory contract has an equitable lien thereon for any money paid by him under the contract, so that, in case he is entitled to recover such money back by means of the inability or refusal of the vendor to perform, he may do so by proceeding against the land.   This is known as the "vendee's lien," and it is universally recognized in equity wherever the doctrines of equity prevail.   The ground upon which the lien exists is thus stated by Lord Chancellor Westbury in Rose v. Watson (10 H. of L. Cases 672):

"When the owner of an estate contracts with the purchaser for the immediate sale of it, the ownership of the estate is in equity, transferred by that contract.   When the contract is undoubtedly an executory contract in this sense, namely, that the ownership of the estate is transferred subject to the payment of the purchase money, every portion of the purchase money paid in pursuance of that contract is a past performance and execution of the contract, and to the extent of the purchaser's money so paid does in equity finally transfer to the purchaser the ownership of the corresponding portion of the estate."

This principle is so firmly established in this state that, when lands have been sold by contract by a testator, the purchase price not having been paid, and the title remaining in him at his decease, the premises contracted to be sold are not to be considered as embraced in his real estate, for the interest remaining in the vendor is not real, but personal, estate.   Lewis v. Smith, 9 N. Y. 502, 61 Am. Dec. 706.   In such a case, upon the execution of the contract, the vendor becomes a trustee of the land for the purchaser, retaining a lien for the purchase price, and the vendee becomes the equitable owner of the land.   Ferry v. Stephens, 66 N. Y. 321; Thomson v. Smith, 63 N. Y. 303; Potter v. Ellice, 48 N. Y. 323; Baldwin v. Humphrey, 44 N. Y. 626.   If this be the true relation which equity recognizes between the parties to an executory contract of sale toward each other and toward the land which is the subject of the contract (and that it is the true relation I take it cannot be questioned), a vendee's lien for moneys paid on account of the purchase would seem to be a natural and necessary corollary, and so it has heretofore generally been considered to be.

In England it was recognized in Wythe v. Lee, 3 Drewry, 396, in 1855, reiterated in Rose v. Watson, supra, in 1864, and again reiterated and enforced in Whitebread & Co., Ltd., v. Watt, Law Rep. 1902, 1 Ch. Div. 835. Thus it was firmly established in England more than half a century ago, and has been repeatedly reiterated since, that a vendee had a lien for the consideration paid, and that equity will enforce it, and neither before 1855 nor since has there been any authority in that jurisdiction which has held to the contrary. That such a lien exists, and that equity will enforce it, has been uniformly held in every state in this country in which the question has arisen. It would be wearisome to cite all the authorities to this effect. A few will suffice to indicate the universality of the rule. Hickson v. Lingold, 47 Ala. 449; Swetitsch v. Waskow, 37 Ill. App. 155; Taft v. Kessel, 16 Wis. 273; Davis v. Heard, 44 Miss. 50; Costen v. McDowell, 107 N. C. 546, 12 S. E. 432; Jones v. Galbraith (Tenn. Ch. App.) 59 S. W. 350; Bullitt v. E. Kentucky Land Co., 99 Ky. 324, 36 S. W. 16; Coleman v. Floyd, 131 Ind. 330, 31 N. E. 75; Shirley v. Shirley, 7 Blackf. (Ind.) 452. In California and N. Dakota, the Civil Codes specifically provide for a vendee's lien, and that such a lien exists and will be enforced in equity is stated by the text-writers of the highest fame and authority, and questioned by none. Pomeroy's Equity, § 1263; Washburn on Real Prop. § 1039; 2 Story's Equity, 1217; Jones on Lien, 1105–1106; Fry on Specific Performance (3d Ed.) § 1452.

In our state the vendee's lien has frequently been recognized. Clark v. Jacobs, 56 How. Prac. 519; Parks v. Jackson, 11 Wend. 442, 25 Am. Dec. 656; Tompkins v. Seely, 29 Barb. 212; Gibert v. Peteler, 38 N. Y. 165, 97 Am. Dec. 785; Chase v. Peck, 21 N. Y. 581. The whole weight of authority is thus to be seen to be in favor, not only of the existence of a vendee's lien, but of the vendee's right to enforce it in equity, provided always, of course, that the failure to carry out the contract of sale has not been the result of any default on his part. Not only is the lien and its enforcibility in equity supported by this great weight of authority, but there is absolutely no authority to the contrary, save the case of Klim v. Sachs, 102 App. Div. 44, 92 N. Y. Supp. 107, a case which has not as yet been followed in this department. Smadbeck v. Law, 106 App. Div. 552, 94 N. Y. Supp. 797.

In Klim v. Sachs, supra, the learned court held that no lien existed in behalf of a purchaser when nothing more appeared than that the vendor was unable to convey the title which he had contracted to convey, and seems to have considered that such a lien attached only when the purchaser had gone into possession under the contract of sale and had made improvements on the land upon the faith thereof. In support of this view, the court cited King's Heirs v. Thompson, 9 Pet. (U. S.) 204, 9 L. Ed. 102, and Gilbert v. Peteler, 38 N. Y. 165, 97 Am. Dec. 785. An examination of these cases shows that, while they support the proposition that a purchaser going into possession under a contract of sale and making improvements upon the faith thereof may have a lien for the money thus expended, they contain nothing limiting a vendee's lien to such a case. On the contrary, in both cases the lien was allowed specifically upon the ground that the

moneys paid out for improvements constituted part payment of the consideration which the vendee was to pay for the land. It is said that in all the cases (at least in the appellate courts) in which a vendee's lien has been sustained in this state there have been found other equities in favor of the vendee besides the mere fact that of the vendor's inability or refusal to completely perform his contract. It is quite true that in many of the cases there have been other matters which have been much discussed, but I have been able to find none in which the right to a lien, and to enforce it, has been made to depend in the slightest degree upon any equities in favor of the vendee, apart from the fact that he has paid a part of the consideration and that the vendor has failed to perform.

. In Tompkins v. Seely, supra, the court found strong equities in favor of the vendee, but these influenced the court, not in awarding him a lien, but in holding him free from any obligation to complete the purchase, which was the real matter in dispute. In Parks v. Jackson, supra, the vendee's right to a lien seems to have been recognized on all hands; the only question discussed or determined being as to the sufficiency of notice to the vendee in possession of the pendency of a suit to set aside a deed to one of his predecessors in title. In Gilbert v. Peteler, supra, the recognition of the vendee's lien was not made to depend upon any special equities. The only question was whether the lien should be extended to certain moneys laid out in improvements on the property by the vendee, and the lien was thus extended because the moneys so laid out constituted, in effect, a part of the consideration; it having been stipulated in the contract that the purchaser should make the improvements before becoming entitled to a conveyance. I affirm, therefore, with confidence that no case can be found in this state or in any other, save only Klim v. Sachs, wherein the existence of special equities has been made the ground for enforcing a vendee's lien, which otherwise would have been disallowed. That there have been few adjudications upon the subject, and fewer still where no other question was involved, is no argument against the existence of the lien or its enforcement in equity, but rather a tribute to the learning and conservatism of our conveyancing bar, who have forborne to present to the courts for decision a question already thoroughly decided on reason and authority.

The right of a vendee to a lien, and to invoke the aid of equity to enforce it, cannot be defeated upon the ground that he has an adequate remedy at law for damages. As well refuse a decree for the foreclosure of a mortgage because the mortgagee can collect his debt at law. To oust equity of its jurisdiction, the legal remedy must be as efficient as the remedy both in respect to the final relief and the means of obtaining it. Kilbourn v. Sunderland, 130 U. S. 505-514, 9 Sup. Ct. 594, 32 L. Ed. 1005. It certainly cannot be contended for an instant that an action for damages, with the more or less doubtful chance of collecting the judgment by execution, is equal in efficiency or certainty to the remedy of foreclosing the lien in equity. It certainly would be far from equal in a city like this, where the transactions in real estate are of great number, and are, no doubt, frequently entered into between total strangers. Under our cumbersome and

complicated system of transmitting title to lands and establishing liens thereon, it is absolutely necessary that some time shall elapse between the making of a contract for sale and actually consummating the transfer. It would be unreasonable in most cases to expect to find a seller content to tie up his property by a contract to convey unless he received some payment on account, or other security, to protect him from loss if the purchaser refuses to complete the contract, and yet it would be equally unreasonable to expect a purchaser to be willing to pay part of the consideration upon signing the contract, if he had no better prospect of protection in case of a defective title, or the vendor's default, than an action at law for damages, with no recourse against the land. Any practical objection to the existence of a vendee's lien, based upon the supposed inconvenience to the vendor of having a lis pendens filed against his property, has been removed by the amendment to section 1671 of the Code of Civil Procedure by chapter 60, p. 71, Laws 1905, which permits such a lis pendens to be canceled upon the giving of a proper security. The rule that a vendee, without fault himself, shall have a lien enforceable in equity for so much of the consideration as he has paid, is reasonable and fair, makes for safety and fair dealing in real estate transactions, and is supported by an overwhelming weight of authority. In my opinion we should not lend our aid to breaking it down.

We find no satisfactory authority, however, for extending the lien so as to cover the cost of examining the title. This is undoubtedly an item of plaintiff's damage; but it is neither money paid as part of the consideration nor money expended in improvements upon the property, and the principle of law upon which the doctrine of a vendee's lien rests does not warrant such an extension of the lien.

We also think that the extra allowance should have been limited to 5 per cent. upon the sum sought to be recovered by the plaintiff. In one sense the whole consideration was involved, but practically the controversy turned upon the plaintiff's right to recover its deposits.

With these modifications, the judgment should be affirmed with costs.

INGRAHAM, McLAUGHLIN, and HOUGHTON, JJ., concur.

PATTERSON, P. J. (dissenting). The question arising upon the appeal from the judgment in this action is presented to this court in this department directly for definite decision, for the first time; and that question is whether, simply on the default of a vendor in performing an executory contract for the sale of land, the vendee, seeking to recover a deposit made on account of the purchase money and the expenses of examining the title to the premises embraced in the contract, may have, not only an equitable lien imposed upon such premises, but also a decree of foreclosure and sale, with the same effect as if he were a mortgagee pro tanto of such premises.

The facts of the case are simple. The defendant agreed to sell and convey to the plaintiff certain premises in the city of New York for the stipulated sum of $8,500, of which $500 was to be paid at the time of the execution of the contract and $8,000 on the delivery of the deed and the closing of title. $500 were paid. On an examination of the

title by the purchaser there were various defects disclosed, such as incumbrances, encroachments, and slight deficiencies in quantity, or at least such vagueness and uncertainty in description as made it difficult to determine what property would pass under a deed. The plaintiff declined to complete the purchase, and I will assume, for the purposes of this decision, that some at least of its objections were well founded, and that it was justified in refusing to take the conveyance and pay the residue of the purchase money. Thereafter the plaintiff began this action, and in its complaint sets forth the transaction with the defendant, and makes appropriate allegations concerning the payment of the deposit money and the outlay for examining the title, and then specifically asks that a lien be declared to exist in its favor upon the premises for the amount of both the deposit and the outlay for examining the title, and prays that a foreclosure of such lien and a sale of the property be directed. The learned judge at the Special Term has granted to the plaintiff all the relief it sought, has directed a sale of the right, title, and interest of the defendant in the premises, and what shall be done with surplus money arising after a sale. The learned judge held that the plaintiff was entitled to a vendee's lien, based upon the theory that the vendor became a trustee of the land which he had sold and held it in trust for the vendee the moment he received part payment under the contract, and that the vendee's part payment operated immediately to effect an equitable conveyance of the land to the extent of the money which he had invested in it, and gave as his only authority for this proposition the case of Whitehead & Co., Ltd., v. Watt, Law Reports App. Div. 1902, 1 Ch. Div. 835. The authority cited undoubtedly declares the law in England to be as stated by the learned trial justice, and there can be no doubt that in this jurisdiction a vendee's lien may also exist arising out of a similar relationship between the vendor of real property and a purchaser, but it has not been held by the courts of final authority in the state of New York that a vendee's lien may be enforced by foreclosure and sale in every case of default by a vendor in the performance of his executory contract. Singular as it may appear, the doctrine of a vendee's lien was never judicially established in England by controlling authority until the year 1855. Before that time there had been discussion and speculation upon the subject, and dicta of judges are to be found in the books tending to the recognition of such a lien, but it was not until the case of Wythe v. Lee, 3 Drewry's Reports, 396, that it was directly recognized. In that case Vice Chancellor Kindersley states in his judgment:

"No case is produced in which the particular point has been determined or even directly raised. Counsel on both sides agree that no such case can be found; and it is extraordinary, considering the number of instances in which the question might have arisen, that there is no single case in which any such claim has ever been attempted by a purchaser. There have been a few cases in which the purchaser has applied for the return of his deposit; but in those cases there has not been even a suggestion that he was entitled to a lien."

In that case the vendee's lien was sustained, and it was supposed to rest upon natural justice and that it might be spelled out from general principles of equity. The case arose upon demurrer to a bill. It is only authority for the proposition that such a lien may exist. The

grounds upon which it may be maintained do not seem to have been definitely stated until the case of Rose v. Watson, 10 House of Lords, 671, which was decided in 1864. The judgments in that case were delivered by the Lord Chancellor (Lord Westbury) and Lord Cranworth, but the grounds upon which they place their conclusions do not seem to have received the full concurrence of all the judges who sat in Whitehead v. Watt, supra. Nevertheless, it may be assumed that in England a vendee's lien pure and simple may be established and enforced in equity; but no such determination, upon what seems to be conceded was a novel doctrine in England, has ever been made by any court of final authority in the state of New York, unless there were some equities apart from the mere fact of a deposit having been made and expenses incurred which called for the exercise of the jurisdiction of a court of equity. As an illustration, such supervening equities as the insolvency of a vendor, the entry of the vendee into possession and his making improvements or incurring other expense in connection with the premises, the subject of the contract, have been regarded as entitling the vendee to enforce a lien in equity; and even in the two leading authorities in England (Rose v. Watson and Whitehead v. Watt) the fact appeared that the vendor in each case was insolvent. It may not be said with absolute certainty that that fact was controlling in the decision in either case. But in all the adjudications in the state of New York, with the exception perhaps of some Special Term decisions, the intervention of special equities has been made to appear wherever a vendee's lien has been enforced. In Tompkins v. Seely, 29 Barb. 212, the purchaser had entered upon the premises and made improvements thereon, and there were other equitable considerations also presented in the record. In Parks v. Jackson, 11 Wend. 442, 25 Am. Dec. 656, the purchaser made valuable improvements upon the property. In Gilbert v. Peteler, 38 N. Y. 165, 97 Am. Dec. 785, the vendees were in possession and made improvements in accordance with the contract, which required certain expenditures as a necessary condition to entitle them to a deed. Chase v. Peck, 21 N. Y. 581, went upon special equities, and does not apply here.

It is suggested by the respondent in the present case that a special equity does appear, namely, that the vendor represented that he was the owner of the premises, the subject of the contract, and that the deposit of $500 was paid upon that representation; but there is nothing to show that Palmer made a willfully false representation. In every contract for the sale of real estate the purchaser must make it upon the belief that the person with whom he is contracting has the ability to perform the contract. There is no special equity arising upon the statement of a person contracting to sell real estate that he is the owner of the land if upon examining the title it is disclosed that such title is affected by trammels and impairments which prevent his making an absolute conveyance thereof free from all legal objection. There is no evidence of bad faith on the part of the vendor in this action.

As I look at this record, it merely presents the case of a person who is entitled to recover at law the amount of a deposit which he has made upon a contract for the purchase of land, which contract has

failed by reason of the inability of the vendor to make title; the purchaser being also entitled to recover at law the amount he has expended in searching the title. The right to enforce a vendee's lien in equity, in such circumstances, has been passed upon and determined adversely to the right in the case of Klim v. Sachs, 102 App. Div. 44, 92 N. Y. Supp. 107. That was an action for specific performance brought by the purchaser against the vendor. There the plaintiff refused to accept a deed on the ground that the title was unmarketable because of certain encroachments of adjoining buildings upon the premises, and also because the buildings on the property to be conveyed encroached upon the street, and he asked that, if the defendant could not specifically perform, he should have judgment for the amount deposited and for expenses of examining the title, and that judgment be impressed as a lien upon the land described in the contract. The justice at Special Term granted the full relief, but it was held by the Appellate Division that the judgment was erroneous in so far as it impressed the sum, together with interest and costs, as a lien upon the premises which were the subject of the contract; and the court struck from the judgment such portions thereof as related to the alleged lien and the foreclosure thereof, and affirmed the money judgment for the deposit and the expenses.

In what may be considered the pioneer case of Wythe v. Lee, supra, the learned vice chancellor, referring to the embarrassment which existed by reason of the want of authority upon the subject, said:

"I should feel much pressed by the absence of any such cases, if I could see that maintaining such a lien could be attended with danger or inconvenience. But I do not see any inconvenience in establishing the rule. I do not see any hardship in it."

The inconvenience and the hardship are made manifest in this case. There is but one breach of an executory contract. By the decision about to be made the vendee is allowed to enforce a lien upon the land for the amount of its deposit and to sell the land under foreclosure of the lien; but there still remains a claim for the expenses incurred in examining the title to the property, the subject of the contract, for which it is declared no lien exists, and for satisfactory reasons. The vendee is certainly entitled to recover for such expenses. Is the vendor to be subjected to another suit, one at law, to recover them? Are two actions to be allowed for the breach of the same contract? Why should the vendor be vexed twice? If in the same action the lien may be enforced and a recovery had for the expenses of searching the title, the vendor is entitled to a trial by jury of the common-law claim. A judgment would provide for the lien and its foreclosure and also for a recovery of a sum of money for the collection of which an execution would issue, and thus for a breach of the same contract, the vendor is to have his real property sold under foreclosure and an execution against his personal property to recover the damages on the common-law cause of action. The inconvenience and the hardship are apparent at once. There is no doubt that such a thing as a vendee's lien exists, but the question is whether, in the absence of any

special equity, such a lien will be enforced by foreclosure where from all that appears an adequate remedy exists at law. In that aspect of the case, I think the judgment now appealed from should be reversed.