(152 App. Div. 723.)

### LONG ISLAND R. CO. v. FAIRCHILD et al.

(Supreme Court, Appellate Division, Second Department.   October 4, 1912.)

EMINENT DOMAIN (§ 45*)—INTEREST SUBJECT TO.

That a railway company received a deed to two parcels of land, on condition that a tunnel would be maintained under one tract and that the grantors should have perpetual use of the surface, does not prevent the company's successor from afterwards taking the surface, on being ordered by the Public Service Commission, to elevate its tracks, except upon the theory of a condition, re-entry, and assessment of damages accordingly, with credit for the amount of the original purchase price.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 94–100, 102, 106;  Dec. Dig. § 45.*]

Appeal from Special Term, Queens County.

Action by the Long Island Railroad Company against Laura M. Fairchild and others.   Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

Edward E. Sprague, for appellants.

James W. Treadwell (Joseph F. Keany and Louis J. Carruthers, both of New York City, on the brief), for respondent.

THOMAS, J.   In 1864 Fairchild and Northrop conveyed to plaintiff's predecessor in title, a railway company, two pieces of land in the village of Flushing.   The grant was upon the condition that the vendee would through parcel No. 2 construct and maintain a tunnel, and that the grantors should have the perpetual use of the surface, and the vendee agreed to perform accordingly.   Enforced by the Public Service Commission, the plaintiff would elevate its tracks, and for such purpose the right to use the surface of parcel No. 2 must be taken, as well as a distinct piece of land adjoining that granted.   But the grantors have died, leaving their widows as their several devisees of the interests herein involved, and certain persons as their heirs, entitled to re-enter and retake the land granted upon breach of the condition, if it be construed as such.   All these parties are defendants, and insist that in view of the agreement there can be no compulsory taking, except upon the theory of condition broken, re-entry, and assessment of damages accordingly, with a credit of $1,797, the original purchase price.

The essence of the appellants' argument is, as I understand it, that the agreement for the tenure and the use of the surface entered into the consideration, that the vendee agreed to maintain forever the status, and cannot escape from or impair its obligation and the benefit flowing therefrom by itself acquiring the interest and thereby nullifying the covenant.   The judgment herein is that the devisees are entitled to the award, based upon the difference in the value of lands within certain limits with the covenant in force, and the value of what will remain with the covenant abrogated, and after taking the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

parcels described in the petition and appropriating them to any proper railroad use. I assume that the lands within the limits defined were all those retained by the grantors intended to be benefited by the agreement, and that the heirs at law have no estate therein. If the grant was upon condition subsequent, the grantors thereby reserved no estate, and their heirs have none. The grantors provided a remedy in case of breach of the condition, whereby the land could be reinvested in them or their heirs. That carried no property interest, as it was a mere legal ability to reacquire land in case the grantee did or omitted to do something. But it contains no property capable of acquisition, and is so formless, intangible, and dependent upon the personal option of the grantor to re-enter, that it is not assignable but descends to the heirs.

In the present case, if there were a breach by the grantee, the heirs could enter upon what? All the land, with the present interest in the devisees eliminated? I see no escape from that, if the provision be regarded as a condition. But the parties to the deed did intend to create a property interest in the grantors, for to them perpetually was continued the possession and use of the surface over parcel No. 2. I will not discuss the nature of the right, whether it was an easement, or profit à prendre, or something else. It is clearly a right to use land, and to subject the grantee's use of the interior to it; and, whatever it is, the devisees took it. Although there is no restriction on the use of parcel No. 1, and in fact the railway therein is an open cut, yet the right reserved or obtained was valuable in connection with No. 2, or the grantor's other holdings, or both. The parties understood that the grantors kept or forever took something, not by virtue of a condition subsequent, which would continue or create nothing, but because the grantee promised to perform the terms of the condition.

But is the condition operative as such, and the covenant available as such? Did the parties intend that the grantors should have the option to forfeit the grant on breach, or to enforce the specific performance of the condition? The remedies look different ways. The choice of enforcing the covenant would affirm the grant and waive the breach; the choice of forfeiting the grant would leave the grantors with a cut through the land and a tunnel running through the whole of parcel No. 2. Moreover, the right of re-entry would inure to the heirs. The right to use the land and enforce the covenant was assignable and has come to the devisees, and the present heirs by answer disclaim any estate or interest in the premises, "except only the possibility of reverter upon breach of the" condition. Now, was it intended that the grantor's assigns could enforce the covenant, and his heirs enforce the condition? The result would be that the heirs would take the land, and the assigns lose whatever they had, and the covenant would be useless. I think that such antagonism was not intended.

A condition and covenant may coexist in some instances, for such was Gibert v. Peteler, 38 N. Y. 165, 97 Am. Dec. 785; but they are so opposite in the remedies afforded that their concurring existence

would seem improbably contemplated. Moreover, where, as already discussed, the main object in view is that the vendee shall use the land so as to leave its surface for the vendor's use and profit, the parties are not merely providing that something shall not be done, but rather the intention is to affirm a right and to fix its tenure. These considerations, in addition to those discussed by the learned justice upon the trial, as well as the authorities cited by him, favor the conclusion that the parties stipulated what should be done and what should be enjoyed by the parties, and fixed the rights by a covenant. The grantors should have the benefit of the exterior; the vendee use the interior.

The present proceeding is not to impair or to destroy the covenant, or to take it or to undo its obligation. From the covenant rights flowed, and the plaintiff, deputized thereto by the state, would take for public purposes the rights thus created. What the grantor gained or reserved by the covenants is taken by the state and for public use vested in the plaintiff. It chances that the plaintiff is not the vendee, but, having bought the latter's interest, would now acquire what fell to the grantor. So that, technically, the proceeding could not be regarded as an attack upon its own covenant, although I regard the suggestion of impairment of the obligation of the covenant as quite aside from the fact. The covenant was a means whereby a property right was established. The state, through the plaintiff, is taking that right and making due compensation for it. The fact that the arm of the state, through which action is had, succeeds to a vendee who stipulated the right and its maintenance, does not preclude its appropriation for public purposes.

If the plaintiff had by original grant or by reservation in a grant to itself confirmed the same interests now held by devisees, the right to take by the exercise of the right of eminent domain would not be extinguished. What a railway company has voluntarily granted or given is not thereby exempted from appropriation for public use. Nor is compulsory taking an attack upon the deed of conveyance, or the covenants in it, but rather an affirmance of it. There is nothing inequitable in what is sought, nor should the result prove so. What was to be benefited by the arrangement will by the taking suffer corresponding loss, and the owners will be compensated fully therefor, whether the damages be direct or consequential.

The judgment should be affirmed, with costs. All concur.