William B. Brennan, Jr., J.
Plaintiff corporation in this equity action seeks to foreclose a vendee’s lien in the amount of $2,200 against property owned by the defendants known as No. 32 Bolling Lane, Levittown, New York. Defendants, plead *1028 ing what amounts to a general denial also seek by way of counterclaim a reformation of the contract and incidental damages.
The court, after trial, finds the following facts:
The defendant William E. Hayward who, with his wife Jacqueline S. Hayward owned premises 32 Rolling Lane as-tenants by the entirety, finding himself in financial difficulty, did in late November, 1960 contact the local real estate brokers’ office of Bond & Dallow seeking a refinancing of his mortgage with a view toward using the proceeds to pay off other existing indebtedness. Bond -& Dallow maintained a close business relationship with plaintiff Pershing Estates, Inc., a funding company, which advanced mortgage funds to many real estate purchasers brought to them by Bond & Dallow. A member of the brokerage firm informed Mr. Hayward that due to his (Hayward’s) limited income it would not be possible to refinance the mortgage. As an alternative method of achieving the same result, the broker suggested to Hayward that Hayward sell his home to Pershing Estates, Inc., and buy from Pershing Estates, Inc., another Levittown home known as 31 Bucket Lane. Hayward was informed that since the principal balance of the mortgage on his own home was low and the principal balance of the mortgage on the Bucket Lane property high, he could take title to the Bucket Lane property subject to the high mortgage and be placed in the needed funds due to the mortgage differential.
On December 2,1960, Mr. Hayward, unrepresented by counsel, went to the office of the attorneys for the plaintiff corporation and executed two separate real estate contracts. The Rolling Lane contract established a purchase price of $12,900 subject to a mortgage of $6,750, indicating an equity of some $6,150 in the Haywards. The Bucket Lane contract established a purchase price of $15,700 subject to a mortgage of $12,100, suggestive, perhaps, of a $3,600 equity in plaintiff corporation. Offsetting these equities and exclusive of any closing costs or extra charges, it was intended that Mr. Hayward should receive in exchange for his house the new house subject to the higher mortgage plus the sum of $2,550. Upon execution of the contracts the sum of $1,200 was advanced by plaintiff corporation to the defendants, this sum representing the net down payments after offset provided for in both contracts.
The contracts, by their respective terms, were independent and unconditional. It can be seen from the aforesaid that the contracts did not, therefore, truly reflect the agreement of the parties. Such a mutual mistake of fact is sufficient to warrant *1029 judgment for the defendants on their counterclaim for reformation and the contracts will be reformed by inserting a clause in each to the effect that closing under the contract is made conditional upon simultaneous closing of title under the other. (Northeastern Shares Corp. v. International Ins. Co., 240 App. Div. 80, affd. 265 N. Y. 574; Portugal v. Reisman, 192 App. Div. 492, 497, 498.)
Within a week after execution of the contracts, Mr. Hayward, seeking to be relieved of his obligation, offered to repay the $1,200 to plaintiff corporation in exchange for canceling both documents. Mr. Bond, a member of the brokerage firm of Bond & Dallow, indicated' that both contracts could be cancelled if Mr. Hayward not only returned the $1,200, but also paid an additional sum of $1,000. Being unable to do so, Hayward prepared to fullfill his obligations and, relying upon the eventual eonsumation of the deal, expended the $1,200 in satisfying his other financial obligations.
The contracts provided for a closing date of April 1, 1961, but in mid-December of 1960 Mr. Bond, speaking for the plaintiff Pershing Estates, Inc., indicated to the defendant Jacqueline S. Hayward that since the previous occupant of the Bucket Lane property had vacated the premises, closing could be accelerated in time for Christmas. Mrs. Hayward, as was her absolute right, refused to accelerate the closing and indicated that the April date would be satisfactory.
Sometime in late February or early March, 1961, a water pipe in the Bucket Lane property burst, causing serious flood damage with consequent structural damage to the ceiling, walls and floor of the premises. The premises were also subject to continued acts of vandalism, and, although the plaintiff did cause certain structural repairs to be made before April 8, 1961, the condition of the property early in May of that year was substantially different from the condition in which it was when the contract was signed. The kitchen was unpainted, the walls were peeling from the water damage, certain floor tiles were up and others which had been replaced were of a different color from those remaining on the same floor, the screening on the entire porch was ripped out, the bathroom door was warped and stuck, windows were broken, and the entire house was in an uninhabitable state. The risk of this substantial loss in value fell upon the plaintiff vendor (Real Property Law, § 240-a; Heerdt v. Brand, 272 App. Div. 143) and the tender by it of the Bucket Lane property in its then condition, with an offer of a mere $100 token abatement of the purchase price, was not a tender of performance of the contract. It was a default, and since the *1030 sale of the Rolling Lane property was conditional upon the sale of the Bucket Lane property, this inadequate tender constituted a default under the Rolling Lane contract as well.
It is well settled that a purchaser cannot enforce a vendee’s lien if he is in default. (Occidental Realty Co. v. Palmer, 117 App. Div. 505, 508; Maurice Apts. v. Kriss, 15 Misc 2d 638; Majestic Factors Corp. v. Latino, 15 Misc 2d 329.)
The complaint is accordingly dismissed and the defendants may have judgment on their counterclaim for reformation, though not for damages as none were proved.