GEORGE G. WILLIAMS et al., as Executors, etc., Respondents, *v.* KATHARINE VAN WYCK HADDOCK, an Infant, Impleaded, etc., Appellant.

As a general rule the owner of real estate, from the time of the execution by him of a valid contract for the sale thereof, is to be treated as the owner of the purchase money and the vendee as equitable owner of the land.

Provisions in such contract making performance on the part of the vendee of his contract to pay a portion of the purchase money and to secure

the balance by mortgage on the premises a condition precedent to a conveyance by the vendor do not take the case out of the general rule.

*It seems*, that after a default in the performance of these conditions precedent the rule may not apply.

But prior to a default on the part of the vendee, even where by the contract time is of the essence thereof, there is an equitable conversion within said rule, subject to be reconverted upon the default happening.

On March 18, 1886, C., being the owner of certain premises occupied as a brewery in the city of New York, contracted to sell the same for a sum specified. A part of this was paid down, a part was agreed to be paid on or before March 18, 1887, and the balance on that date by a bond secured by mortgage on the premises. The vendor agreed, on receipt of the second payment and of the bond and mortgage, which were to be delivered at a place specified at twelve o'clock noon of the day specified, that she would execute and deliver a deed of the premises. It was agreed that the vendees should, at the same time and place, purchase the materials, fixtures, etc., used in the business at a price, and on conditions to be agreed to in writing between the parties; otherwise that the vendor would be at liberty to refuse to consummate the sale. In case of failure of the vendees to perform at the time specified, it was provided that all their interest in, or right to, a conveyance should "*ipso facto* cease and determine absolutely." It was also provided that the stipulations of the contract should bind the heirs, executors, etc., of the parties. On March 27, 1886, the parties agreed in writing upon the terms of the purchase of the materials and fixtures. C. died April 22, 1886, leaving a will. The executors duly qualified, and prior to the time specified in the contract for performance they agreed with the vendees to postpone performance until June 1, 1887. On that day the vendees performed and the executors conveyed the premises. In an action brought by the executors to determine, among other things, as to whether the proceeds of sale should be distributed to the next of kin, to the exclusion of one heir not a next of kin, *held*, that there was an equitable conversion of the real estate into personalty at the time of the execution of the contract, and that there was no default; that the executors, acting in good faith, had the right, prior to default, to extend the time of performance; and, therefore, that the next of kin took the avails as personal property to the exclusion of those who were only heirs at law.

*Bostwick* v. *Frankfield* (74 N. Y. 215); *Harvey* v. *Aston* (1 Atk. 361); *Atty.- Gen.* v. *Day* (1 Ves. Sr. 218); *Scott* v. *Tyler* (2 Brown's Ch. 431); *Wells* v. *Smith* (2 Edw. Ch. 78); *Teneick* v. *Flagg* (29 N. J. Law, 25), distinguished.

Reported below, 78 Hun, 429.

(Argued February 4, 1895; decided February 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1894, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiffs, who are executors of the will of Catharine M. McCoskry, deceased, against the defendants, some of whom were heirs at law and others next of kin of the testatrix, for the purpose of obtaining judgment directing the conveyance by the defendants, who are the heirs at law and next of kin of such testatrix, of certain real estate owned by her in her lifetime, to the Langdon and Granger Brewing Company, Limited, and also for the purpose of determining what, if any, substantial or beneficial interest the infant defendant had or has in the proceeds of the sale of the premises, and what are the respective rights and interests of the other defendants in the premises and in the proceeds of the sale thereof; also to obtain a construction and interpretation of the provisions of the will of the testatrix in so far as they bear upon the questions involved in the action. It appears that on the 18th day of March, 1886, Catharine M. McCoskry of the city of New York was the owner of premises known as Read's Ale Brewery in the city of New York, between 13th and 14th streets. On that day she entered into a contract for the sale of that real estate to Thomas B. Langdon and Septimus W. Granger for the sum of $125,000, of which the sum of $12,500 was paid at the signing of the contract, $37,500 were to be paid on or before March 18, 1887, and the balance by the giving of a purchase-money mortgage at that date on the premises by the purchasers. The vendor agreed that upon receiving these payments and upon the execution and delivery of the mortgage, with the usual bond accompanying the same, and the payment of interest as provided in the agreement on or before March 18, 1887, she would then execute and give a good and sufficient deed of the premises; these payments were to be made and the bond and mortgage and deed were to be delivered at the Chemical

National Bank in the city of New York at 12 o'clock noon of
that day.   It was also agreed that at the same time and place
the vendees should purchase the materials, fixtures, etc., in and
about the brewery business and premises at a price and on con-
ditions to be agreed to in writing between them; otherwise
the vendor should be at liberty to refuse to consummate the
sale of the real estate under this contract.   The vendees were
to have the right and privilege of occupying the premises as
tenants of the vendor for one year from the 18th of March,
1886, or until the closing or consummation of the sale, if
sooner completed.   The payment of interest, taxes and insur-
ance provided for in the contract was to be accepted in lieu
of any further rent for that year.   The contract then contained
the following provision :

" It is further understood that in case of the failure of the
parties of the second part on or before the eighteenth day of
March, one thousand eight hundred and eighty-seven, to pay
said sum of thirty-seven thousand five hundred dollars and
said interest and taxes, and to deliver said bond and mortgage
as herein provided, and otherwise to perform said contract on
their part, all interest in the said premises and all right and
claim to a conveyance thereof shall *ipso facto* cease and deter-
mine absolutely, and the premises shall be delivered over to
the party of the first part.

" And it is understood that the stipulations are to apply to
and bind the heirs, executors, administrators and assigns of
the respective parties.

" In witness whereof, the parties to these presents have
hereunto set their hands and seals the day and year first above
written."

(Signed by the parties.)

On the 27th of March, 1886, the parties to the above
agreement also agreed, in writing, upon the terms for the pur-
chase of the materials and fixtures mentioned in the first con-
tract.   Subsequently, and on April 22, 1886, Mrs. McCoskry
died, leaving a last will and testament which was duly admitted

to probate as a will of real and personal property by the surro-
gate of the county of New York, and the plaintiffs, the execu-
tors named in the will, duly qualified and entered upon the dis-
charge of their duties as such executors. Some little time prior
to March 18, 1887, the vendees in this contract and the plain-
tiffs herein had negotiations in regard to the extension of the
time for the payment of the balance of the purchase money and
the giving of the purchase-money mortgage, and for the pay-
ment for the fixtures and materials of the brewery as agreed
to March 27, 1886 between the parties to the agreement for
the sale and purchase of the real estate. The result of such
negotiations had been an understanding between the plaintiffs
and the vendees in the real estate contract for an extension of
the time for closing the contract, from the 18th of March to
the 1st of June, 1887, on which last-named day the money pay-
ments were made on account for the real estate and in full for
the materials, and the executors gave a deed of the premises
to the vendees who gave the purchase-money mortgage for
$75,000, as agreed upon. The defendant, Katharine Van
Wyck Haddock, is an infant and is the daughter of a deceased
nephew of the testatrix, Catharine M. McCoskry who died
without ever having had any children. The infant defendant, by
her guardian, claims to share in the proceeds arising from the
sale of the real estate on the ground that such proceeds repre-
sent and are to be deemed real estate, and that she is entitled to
her share as one of the heirs at law of Mrs. McCoskry. The next
of kin claim that by the contract for the sale of the premises,
entered into by Mrs. McCoskry in her lifetime, the character
of the real estate became, in equity, changed into personal
property, and should be distributed to the next of kin, and as
the infant defendant is not one of such next of kin, but only
one of the heirs at law, she is not entitled to any portion
of the proceeds of such sale. The courts below have decided
in favor of the next of kin to the exclusion of the infant, as
one of the heirs at law, and have held that the executors had
the right, under the provisions of the will of the testatrix, to
execute the deed, and that a good title was thereby conveyed.

to the purchasers.   The infant defendant only has appealed to this court, and the sole question now is whether the courts below were right in excluding the infant heir at law from any portion of these proceeds.

*J. Edward Swanstrom* for appellant.   Under the contract of sale no estate passed to the vendees at the time of its execution.   The whole estate, legal and equitable, remained in the vendor and upon her death pending the completion of the contract became at once vested in her heirs.   (*Bostwick* v. *Frankfield*, 74 N. Y. 215 ; *Higgins* v. *D. R. R. Co.*, 60 id. 557 ; *Harvey* v. *Aston*, 1 Atk. 376 ; *Wells* v. *Smith*, 3 Edw. 78.)   The doctrine of equitable conversion has no application in a case where equity would, if a bill were filed, refuse to decree specific performance.   (1 Hilliard on Vendors, 181, 182; *Atty.-Gen.* v. *Day*, 1 Ves. 220 ; *Teneick* v. *Flagg*, 29 N. J. L. 25.)   Under the provisions of the will there was an equitable conversion of the brewery real estate into personalty only so far as was necessary to satisfy the legacies which were made a specific charge against said real estate.   The balance remaining over retained its original character as real estate, and descended to the heirs.   (Williams on Ex. [7th ed.] 1808 ; *Read* v. *Williams*, 125 N. Y. 570 ; *Parker* v. *Linden*, 113 id. 37.)   The claim that the infant heir is estopped from asserting any rights in this action by the former adjudication in *Read* v. *Williams* is wholly untenable.   (*Bell* v. *Merrifield*, 109 N. Y. 211.)

*Charles A. Jackson* for respondents.   The conveyance was ample.   (*Holly* v. *Hirsch*, 135 N. Y. 590.)   Defendant has no interest in the conveyance, and it follows clearly that she can have none in that which was given for that conveyance.   (1 Sugd. on Vendors [8th Am. ed.], 285, 287.)   The contention of the heir at law, that as this contract for sale contains the words : " It is further understood that, in case of the failure of the parties of the second part, on or before the eighteenth day of March, one thousand eight hundred and eighty-

seven, to pay said sum of thirty-seven thousand five hundred dollars and said interest and taxes, and to deliver the said bond and mortgage as herein provided, and otherwise to perform said contract on their part, all interest in the said premises and all right and claim, to a conveyance thereof shall *ipso facto* cease and determine absolutely, and the premises shall be delivered over to the party of the first part," and time was of the essence of the contract, the contract was void for non-performance, and the property, therefore, became the property of the heirs at law, is untenable. (*Pearsall* v. *Chapin,* 8 Wright, 9 ; *Brashier* v. *Gratz,* 6 Wheat. 533 ; 3 Pars. on Cont. [8th ed.] 385 ; 1 Sugd. on Vendors, 193.)  The matter is *res judicata.* (*Smith* v. *Smith,* 79 N. Y. 634.)

*Manley A. Raymond* for executors, respondents.

Peckham, J.  The question in this case arises upon the true interpretation of the contract for the sale of the brewery entered into on the 18th of March, 1886.  The general rule in regard to contracts for the sale of land is that the owner of the real estate from the time of the execution of a valid contract for such sale is to be treated as the owner of the purchase money, and the purchaser of the land is treated as the equitable owner thereof.  The vendor is deemed in equity to stand seized in the land for the benefit of the purchaser, and the latter, even before the conveyance to him, can devise the same and it descends to his heir and the land which was agreed to be sold has been turned into money belonging to the vendor. Courts of equity regard that as done which ought to be done ; they look at the substance of things and not at the mere form of agreements, to which they give the precise effect which the parties intended.  It is presumed that the vendor in agreeing to sell his land intends that his property shall assume the character of the property into which it is to be converted, and it cannot be denied that it is competent for the owner of land thus to make such land into money at his sole will and pleasure. If the vendor die prior to the completion of the bargain, pro-

vided there have been no default, the heir of the vendor may
be compelled to convey and the proceeds of the land will go
to the executors as personal property. (Story's Eq. Jur.
§§ 790, 791, 1212; Sug. on Vend. [8th Am. ed.] pp. 270, 273,
ch. 5; *Baden* v. *Pembroke*, 2 Vern. Ch. 213; *Fletcher* v.
*Ashburner*, 1 Brown's Ch. 497; *Eaton* v. *Sanxter*, 6 Simons,
517; *Farrar* v. *Earl of Winterton*, 5 Beav. 1; *Livingston* v.
*Newkirk*, 3 Jo. Ch. 312; *Champion* v. *Brown*, 6 id. 398;
*Craig* v. *Leslie*, 3 Wheat. 563.)

The learned counsel for the infant defendant does not deny
the existence of the general rule above stated, but he says this
equitable conversion is not invariable and that it cannot apply
when the intention of the parties is clearly adverse to such a
result. (Citing the case of *Bostwick* v. *Frankfield*, 74 N. Y.
215.) It may be assumed that the rule does not obtain under
circumstances which show clearly that the parties never
intended that it should, but in this case we think no such
exception to the rule can properly be deduced from the con-
tract itself. The argument of the learned counsel proceeds
further, and he claims that if the performance of the con-
ditions which the vendees were to perform were by the clear
terms of the contract a condition precedent to any conveyance
of the real estate by the vendor, that then the rule does not
obtain and no estate, legal or equitable, vests in the vendees
until the actual performance on their part of such conditions.
He says further that the stipulation making time of the
essence of the contract is considered by the courts as a condi-
tion precedent, and that this contract does make time of its
very essence by virtue of the clause to that effect set forth in
the foregoing statement of facts. The counsel also maintains
that the vendees did not perform their contract on the due
day, March 18, 1887, but made default, and the executors had
no power to excuse it, hence there was no performance of a
condition precedent and the estate never vested in the pur-
chasers until the deed to them, at which time there had been
no conversion, and the proceeds have, therefore, come to the
executors in the form of real estate which descends to the heir.

It may be said that in most contracts for the sale of real estate, the performance of some act on the part of the vendee is to precede the conveyance by the vendor, and hence such performance might be a condition precedent to such conveyance. These contracts generally provide for the payment of the purchase money, or some portion thereof, and the giving of a mortgage or some security for the portion which is not to be paid in cash, and that upon the payment of the money and the execution of the security the vendor is then to make the conveyance. But we think provisions of that nature found in contracts for the sale of real estate do not, prior to any default, alter this general rule in regard to the equitable conversion of the real into personalty so far as to prevent the ordinary results flowing from such conversion. After the happening of a default in the performance of conditions precedent, a very different case is made. We think there was an equitable conversion at the time of the execution of this contract, and that there has never been any default. The cases cited by the counsel are those generally which have arisen after a default has occurred on the part of the vendees in fulfilling their contract at the time mentioned in the agreement, where time has been made of the essence of the contract. In those cases the right of the vendee, upon tender of performance after the due day, to have a deed of the premises executed and delivered to him has been denied by the courts on the ground that the parties had by their agreement made the performance of a certain act a condition precedent to the right to enforce specific performance of the contract. Where there was a default and a failure to perform such act within the time agreed upon (time being of the essence of the contract), it has been held that courts have no power to make any other or different contract for the parties, and that they would do so by enforcing specific performance where such default existed. It is stated that such a case is not within the principle which allows courts of equity to relieve against failures or forfeitures, such as would arise where time had not been made of the essence of the contract, and the party, within a

reasonable time after the day designated for its performance, had tendered performance with compensation for delay, in which case the court would relieve upon providing for such compensation.

Counsel for defendant cites the case of *Harvey* v. *Aston*, decided in the Court of Chancery in 1737 (1 Atkyns, 361) as an illustration of his contention that no estate vests in the case of a condition precedent until the performance of the condition. The case is not an apt illustration of the principle involved here. There was a default and the case was one of a settlement under a trust term for the benefit of the daughters of the testator to pay to each of them the sum of £2,000, if she should marry with the consent of her mother, if living, and a widow; if not then with the consent of the trustees or the survivor of them, his executor, administrator or assigns. The plaintiff Harvey married one of the daughters without this consent and claimed the payment of the legacy. The court (HARDWICKE, Lord Chancellor) held that the plaintiff was not entitled to the portion because of the non-fulfillment of the condition precedent and its violation by the daughter marrying without the requisite consent. In the report a long argument is given of counsel on either side upon the question of the validity of such a condition as being in restraint of marriage, but the court held that it was a valid condition and must be performed before the party was entitled to receive the money. As it had been violated the court could not relieve against the non-performance of the condition.

In *Attorney-General* v. *Day* (1 Ves. Sr. 218 at 220), cited by counsel, the following language was used by the lord chancellor (HARDWICKE) in his opinion:

"There is no case where the representative of the personal estate is entitled to claim the money arising by sale of the lands as personal estate, except where one or other of the contracting parties in the purchase is entitled to carry it into execution in a court of equity; for, where the court holds it ought not to be executed, there is no conversion of real into

personal, in consideration of the court, upon which that right of the executor depends ; for, if not effectually converted into money, it must be considered, according to its original nature, as real, and the heir at law must have the benefit. Whether there is any such conversion depends upon there being an effectual agreement binding upon all the parties so as under all the circumstances it ought to be carried into execution upon this general principle of equity; that what is contracted for valuable consideration to be done will, by the court, be considered as done; all the consequences arising as if it had been so, and as if a conveyance had been made of the land at the time to the vendee. But if the circumstances are such that it cannot now or ought not to be carried into execution, though once it might, these consequences cannot follow, for the court must consider it as land and the money as the parties' own who was to be the purchaser."

This language was used, in 1748, in a case where though specific performance might once have been decreed against original parties holding as tenants in common, yet an alteration in the circumstances had taken place before suit brought which prevented a decree as to one moiety, and the court would not direct a performance as to the other, the contract being entire and the execution of half of it inadequate to the prime subject. In such a case as the court was then speaking of it regarded the alteration of parties and circumstances as furnishing good cause for refusing specific performance, and as the parties refused to perform, it is clear that the land remained with the original owner and the purchase money in the pockets of the would-be purchasers. In its results it was like the case of a default in the performance of a condition precedent. It was not a case for the continuation of the doctrine of equitable conversion, and from the time when the court would refuse to enforce the contract the conversion would cease and the land would regain its original character in the hands of its owner.

The case of *Scott* v. *Tyler* (2 Brown Chy. 431) is another case of a condition annexed to a legacy. It was argued at

very great length by counsel and decided by Lord Ch. THUR-
LOW, in 1788, in the same way as *Harvey* v. *Aston* (*supra*).

The case of *Wells* v. *Smith* (2 Edw. Ch. 78) is the case of
a contract to sell lands where time was of the essence thereof,
and the vendee failed to perform the condition at the time
mentioned in the contract. In other words, he had defaulted,
and the court held by reason of such default, under the terms
of the contract which the parties had entered into, it had no
power to decree the performance upon tender or payment of
the purchase money. But that case is not inconsistent with
the principle contended for herein, that even in a contract
where time is of the essence there is upon its execution and
prior to a default on the part of the vendee, an equitable con-
version of the land within the rule contended for. When
default is made this equitable conversion falls with the con-
tract and the vendor is re-vested with his original right unim-
paired. The vice-chancellor (McCOUN) said, in *Wells* v.
*Smith*, that that was a case of a condition precedent where no
estate vested in law until the condition was performed. As
the legal title did not pass the vice-chancellor said he was
not at liberty to suppose the parties intended it should have
passed or that any effect was to be given to the contract
beyond the plain import of its terms or inconsistent with the
rules of law. No one, of course, contends that any legal title
passes upon the execution of a contract of this kind, but it is
claimed that even in a case where time is of the essence of the
contract there is an equitable conversion prior to the default,
subject to being re-converted upon the default happening.

The case of *Teneick* v. *Flagg* (29 N. J. Law, 25) is also cited.

Mr. Justice HAINES in that case, replying to the contention
of the defendant's counsel, that by the contract of sale the
estate was converted into personalty, and hence that the pur-
chase money went to the administrators to be disposed of in
due course of administration, said that " such was undoubt-
edly the general rule in equity, but that it was not the rule at
law. In equity the contract may be specifically exposed and
the land regarded as that of the purchaser, and held by the

vendor in trust for him, while the consideration money is deemed to belong to the vendor, and held in trust for him by the purchaser, and equity enforces these several notional trusts. But at law it is otherwise. The purchaser is there left to his action for damages for the breach of the contract, and must take his relief in money, while the title of the land continues in the vendor or his heirs or assigns. The doctrine of equitable conversion is not applicable to estates at law or to courts of law." And as the action in question was an action at law the court held that that equitable doctrine did not prevail. That was a case where land was sold and a part of the purchase money paid, and the deed was executed and placed in the hands of a third person to be delivered to the grantee, and the balance of the purchase money to be paid on the happening of a certain event. The grantee died before the event happened, and it was held that the title to the land did not vest in the purchaser, but descended to the heirs of the vendor, subject to the equitable rights of the purchaser.

That is a different case from the one at bar.

The provision in this contract, that the vendees should also agree thereafter with the vendor for the purchase of the materials and fixtures, etc., in the brewery, with liberty to the vendor to refuse to consummate the sale of the real estate if the other contract were not performed, does not alter the rule above stated. We cannot see in this any intention of the parties that they should not be bound by the general rule in regard to a contract for the sale of land. There is nothing which leads us to suppose that they intended by these provisions to change that rule, but, on the contrary, the whole meaning of the two contracts, taken together, clearly shows, as we think, an intention on the part of the vendor to change that land into money, and on the vendees' part to change their purchase money into land. If the conditions are not performed then the ordinary rule comes into force, and the equitable conversion which existed during the running of the contract ceases, and the parties return to their original positions.

The case of *Bostwick* v. *Frankfield* (74 N. Y. *supra*) is one

which shows beyond any doubt that the intention of those parties was that this conversion should not take place.  There was a leasehold term outstanding at the time of the execution of the contract of sale, and it appears clearly from the terms used and from the opinion of the court in that case that it was never the intention that that leasehold interest should. be merged in the contract for the sale of the land,·but that, on the contrary, it should exist as a valid outstanding estate during the time of the running of the contract for the sale of the land, and until its performance according to the terms thereof.

Holding then as we do, that in this case the general rule obtains, it follows that at the execution of this contract the equitable conversion took place.  Such was the condition of affairs at the time of the death of Mrs. McCoskry.  There had been no default.  On the contrary, up to her death all the terms of the contract which the vendees were to perform had been by them performed, and the contract to purchase the materials had also been entered into, and upon her death the rule still obtained as to an equitable conversion of this land. Upon the performance, without default, of the terms of the contract the purchase money would come to the executors as personalty to be distributed by them as such and not to descend to the heirs at law.  Under the circumstances we hold with the learned General Term that the executors acting in good faith, of which there is no question, had the right prior to the default to extend the time for the performance of the conditions by the vendees, and when within the time extended, these conditions were performed the equitable con- version which originally took place remained in being and these moneys should go to the next of kin as personal prop- erty, to the exclusion of those who are only heirs at law.

For these reasons the judgment should be affirmed, with costs to the respondents and to the guardian *ad litem* for the infant heir at law, to be paid by the executors out of the estate of Mrs. McCoskry in their hands.

All concur.

Judgment accordingly.