THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Plaintiff, *v.* EDMUND P. COTTLE and Others, Defendants.

(Supreme Court, Erie Special Term, December, 1917.)

Condemnation Law — an award is "personal property" not "land" — when state may not claim award on ground of escheat.

An award made to the owner of property condemned is in effect a judgment for money which is personalty, and he has an equitable lien on the land condemned as security for the payment of the award.

In an action brought by such an owner against the railroad company which instituted the condemnation proceedings, and its receivers, the judgment therein entered declared such equitable lien and directed the same to be enforced by a sale of the property to satisfy it. *Held,* that assuming that the plaintiff in said action died intestate as to the real property condemned there was no escheat to the state, as the award made was to be deemed personal property and not land.

That a motion to confirm the report of a referee appointed, in a condemnation proceeding instituted against the executors of the former owner of the property who had purchased it for themselves and not for the estate, to take the proof in regard to the right, title and claim of various defendants to the award, in favor of the state, upon the theory that the former owner of

the property condemned, from which the fund arose, died intestate as to the property, without heirs capable of taking by descent, and for that reason the property escheated to the state and that the award should go to it, will be denied.

MOTION for the confirmation of the report of referee.

Egburt E. Woodbury, attorney-general, Wilber W. Chambers, deputy attorney-general, and Clarence R. Cummings, for people.

Edmund P. Cottle in person and attorney and counsel for Elizabeth E. Cottle, Bessie McK. Cottle and Marion W. Cottle.

Adelbert Moot, for Josiah G. Munro.

Persons & Blair, for Florence R. Hill, Robert C. Hill and Evelyn C. Hill.

Sydney W. Petrie, guardian *ad litem*, for infant defendants Marion C. Sheldon, Carew Sheldon and Octavia Sheldon.

WHEELER, J. This is a motion to confirm the report of a referee appointed by this court to hear the proofs and report in regard to the right, title and claims of various defendants to the award or fund now on deposit with the Marine National Bank of Buffalo, made in this proceeding, in and by which report the referee finds that such fund, together with the interest accruing thereon, should be paid to the people of the state of New York. The confirmation of this report is opposed by the other defendants to this proceeding. The report in favor of the state of New York is predicated upon the theory that John J. P. Read, a former owner of the property condemned, from which the fund arose, died intestate as to the property in question,

Supreme Court, December, 1917.   [Vol. 102.

without heirs legally capable of taking the property by descent, and that therefore the property escheated to the state, and the fund in question should go to it.

In order to understand the questions involved it becomes necessary to here state the history of the title to the property condemned.

John J. P. Read acquired title in 1876 by purchase. In May, 1883, the New York, West Shore and Buffalo Railway commenced proceedings in this court to condemn the lands in question for railway purposes. The proceeding was continued, and in December, 1883, the commissioners named to determine the damages filed their report awarding $14,500 as the value of the lands taken, and directing in this report the deposit in the bank of certain sums to pay accumulated taxes, and the balance, to wit, the sum of $12,556.98, to be paid to the owner, John J. P. Read. This report was confirmed by order of the court. In June, 1884, the receivers of said railway company were thereafter duly appointed. In September, 1884, the receivers complied with the order so far as the deposit of money for the payment of taxes is concerned, but they did not pay to Read the balance of said award, and he never received it. On July 25, 1885, the said John J. P. Read began an action in this court against the West Shore Railway Company and its receivers, setting up the proceedings of condemnation above recited, and praying said railroad and its receivers be barred and foreclosed of and from all right, title and interest in and to the land condemned. The defendants answered, setting up certain counterclaims and offsets. The issues were tried, and a judgment entered establishing the amount due the plaintiff (after the allowances of certain claims of the defendants, which sum was declared a lien on the land in question), and directing the defendants have leave to redeem said land by the payment of the amount due

the plaintiff within a given time, and if the property was not so redeemed directing the premises to be sold by referee (as in cases provided for sale of mortgaged premises), for the purpose of satisfying the demand of the plaintiff as thus established, and, if the property did not bring sufficient to satisfy said claim with costs and expenses of the sale, that Read, the plaintiff, have a deficiency judgment therefor against said railway company. The judgment further provided the plaintiff or other parties might become a purchaser at said sale. Read, feeling dissatisfied with the allowances made the defendants by way of counterclaim and offset, appealed to the General Term of this court from certain portions of said judgment. Before said appeal was argued, and on the 1st day of February, 1896, the said John J. P. Read died, and on the 14th day of December, 1896, the said appeal in said action was continued by the executors of his will, who were substituted as parties appellant. The appeal was argued and the judgment affirmed by the Appellate Division, and the premises were thereafter and on the 16th day of November, 1898, sold by referee pursuant to said judgment, and on said sale were purchased by Octavius O. Cottle and Clayton M. Hill individually for the sum of $1,000 and a deed of conveyance to them was made and delivered by the referee appointed to make the sale. The amount of the bid when compared with the award made is small, but it is fair to say that from 1883 to the time of the sale city and county taxes had remained unpaid and tax sales and certificates of sales were outstanding, and the foreclosure sale was made subject to such taxes. The said John J. P. Read left a last will and testament, and at the time the foreclosure sale was had the said Octavius O. Cottle and Clayton M. Hill were acting as the executors thereof, although the purchase was made by them as individual

3

purchasers. On December 28, 1905, said Octavius O. Cottle, as sole surviving executor of the last will and testament of John J. P. Read, executed and delivered a deed of said premises to his daughter Marion W. Cottle for the expressed consideration of one dollar. In February, 1914, more than fifteen years after the sale and the giving of the deed under foreclosure to Cottle and Hill, the New York Central and Hudson River Railroad Company began this proceeding to condemn the property in question for railroad purposes. An award was made and the report of commissioners confirmed. By the stipulation of all parties to the proceeding the amount of said award, to wit, the sum of $15,000, was paid into court in accordance with the provisions of section 3378 of the Code of Civil Procedure, the ownership and rights of the parties to said fund to be determined as therein provided.

The referee to whom this matter was referred has reported that the people of the state of New York own and have title to said moneys, and that no party to the proceeding, other than the people, has any right, title or interest in said fund, or to the possession thereof. The conclusions of the learned referee are based on the theory and finding that by the last will and testament and codicil of the late John J. P. Read he made no disposition of the parcel of land condemned, that he died without heirs capable of inheriting the real estate in question, that the condemnation proceedings instituted by the New York, West Shore and Buffalo Railway Company in 1883 did not operate to transfer title to the railway company, that the purchase on foreclosure by the late Octavius O. Cottle and Clayton M. Hill was in violation of the trust relation they occupied to the estate of said John J. P. Read as executors of his will, and that the conveyance to them on such sale was open to attack and void, and that therefore the real property

in question escheated to the people of the state of New York, and the state is entitled to the fund arising from its condemnation for railway purposes.

Many difficult and interesting questions of law and fact are raised and discussed by the various claimants to the fund in their briefs and arguments submitted to the court. The main question, however, is whether, · assuming John J. P. Read died intestate as to the real property condemned, there was an escheat to the state. I take it that this turns mainly on the question whether the land is to be deemed realty or personal property. The learned referee in his report and in his opinion appears to have proceeded entirely upon the theory that the land condemned is to be treated as real estate, so far as the interests of the people of the state of New York and other claimants are concerned. In this view the court is unable to concur. The New York, West Shore and Buffalo Railway Company instituted proceedings to condemn this property for railway purposes in 1883. The proceedings were carried to a final report of commissioners, which was confirmed by the court, and the West Shore Railroad Company paid into court a part of the award so made, but leaving the balance unpaid. It is true that under the statutes in force at the time of the entry of the final order in the condemnation proceeding Read's legal title to the property in question would have been divested only on payment or deposit of the amount of the award. Railroad Law (Laws 1850, chap. 140), as amd. by Laws of 1876, chap. 198, § 18.

Read had an award for so much money for the property condemned, which had been paid in part. An award is deemed personal property. It is not land. This has been repeatedly and uniformly held in a series of well-considered decisions of the courts of this state. *Wendel* v. *Binninger,* 132 App. Div. 785–789; *Matter of*

*Seventh Avenue,* 59 id. 175–177; *Van Loan* v. *City of New York,* 105 id. 576; *King* v. *City of New York,* 102 N. Y. 171; *Matter of Hamilton Street,* 69 Misc. Rep. 371; *Matter of Trinity Avenue,* 116 App. Div. 252.

An award, of the kind made, is a judgment, which may be enforced by action like other judgments. *Donnelly* v. *City of Brooklyn,* 121 N. Y. 15; *Dolan* v. *City of New York,* 62 id. 472.

"An award is not land. * * * It is personal property that passes at death to the personal representative and not to the heir." *Matter of Seventh Avenue,* 59 App. Div. 175–177.

In *Wendel* v. *Binninger,* 132 App. Div. 785–789, it was said: "The character of the real property was changed into personalty by the award and there is no equitable consideration which authorizes the court to treat an award as realty."

It is unnecessary in this case to go to the extent of holding that the award to Read in the West Shore proceeding actually changed the character of the land itself into personalty. It is sufficient to say that the award became in effect a judgment for money, which is personalty, and that Read had an equitable lien on the land condemned as security for the payment of the amount awarded. This lien may be likened to the lien of a vendor on land sold for the payment of the purchase price. Not only had Read this equitable lien, but in the action brought by him in his lifetime against the West Shore Railroad Company and its receivers this lien was by the judgment of the court declared, and directed to be enforced by a sale of the property to satisfy it.

Even though the land itself were to be deemed realty and subject to an escheat, nevertheless by section 68 of the Public Lands Law it is declared: "Lands escheated to the state for defect of heirs shall be held

subject to the same trusts and incumbrances to which they would have been subject if they had descended.''

Consequently even though the state could claim a technical escheat, it took title subject to the claim of the real estate for the unpaid balance of the award made in the West Shore Railway proceeding, and subject to the decree of foreclosure and sale to satisfy that claim made and entered in Mr. Read's lifetime, which claim the estate had the right to enforce and did enforce by the sale in foreclosure. It should be noted, too, that although Read may possibly have had other remedies on the failure of the West Shore Railway Company to pay the award, nevertheless he had personally elected to stand on the award, to treat the award as personalty, and to take the steps necessary to collect the amount by the sale of the property in question. Under such circumstances we are unable to see how there can be said to be any escheat, or how the state can assert the right to the land discharged of the unpaid balance of the award. In any event the land was sold under and pursuant to a perfectly valid decree of foreclosure and sale. Octavius O. Cottle and Clayton M. Hill bid it in in their individual interest. It is urged, however, that they owed the duty to the estate of John J. P. Read to have purchased the property as executors and to have held it for the benefit of those interested in the estate, and that they perpetrated at least a constructive legal fraud by taking title to themselves as individuals. Let us suppose that instead of purchasing for themselves the executors had bought in the property for the estate they represented, and had the referee's deed run to themselves as executors of Read's will. Then clearly under well-recognized rules of law and equity the real property so acquired would still partake of the character of personal property, and any money derived from the sale

of such property by the executors would not be distributed to heirs under the Statute of Descent, but would be distributed to next of kin under the Statute of Distribution governing personal property. The property may change its form, but the change does not affect the rights of parties in interest to have the property in its converted form treated the same as though the change had not been made. We may perhaps treat the property condemned by the West Shore Railway condemnation proceeding as sold to the West Shore Railway Company. It was a compulsory sale, to be sure; but the judgment of condemnation fixing the price to be paid was in legal effect tantamount to a sale obligating that company to pay the price fixed, evidenced by the judgment of condemnation. Read in his lifetime elected to treat it as a sale by seeking to enforce the award by a foreclosure sale of the property affected, and by a judgment for any deficiency arising.

It is a rule of law and equity that where an owner sells land the nature of his estate is changed; and that the realty is in equity changed into personalty. *Williams* v. *Haddock,* 145 N. Y. 144; *Beckrich* v. *City of North Tonawanda,* 171 id. 300; *Lewis* v. *Smith,* 9 id. 502; *Smith* v. *Gage,* 41 Barb. 60; *Moore* v. *Burrows,* 34 id. 173; *Johnson* v. *Corbett,* 11 Paige, 265.

After such a sale the vendor holds title as trustee for the vendee, and the proceeds of sale, even though received after the vendor's death, are distributed to the next of kin as personalty, and do not go to the heirs-at-law as real property. We think this rule is applicable to the facts in the case.

Although the technical legal title to the land itself remained in Read, nevertheless he held title as trustee for the West Shore Railway Company, and in this connection we call attention once more to the provisions of section 68 of the Public Lands Law declaring that

" Lands escheated to the state for defect of heirs shall be held subject to the same trusts and incumbrances to which they would have been subject if they had descended."

If these views are correct, then certain consequences follow. Among them is that there was and could be no *escheat,* so called. Land escheats, and the provision of the New York State Constitution relates solely to land and not to personal property. N. Y. Const. art. 1, §§ 10, 11, 12. It mentions a defect of heirs (not next of kin) as a ground for escheat. The award to Read was personal property, and did not escheat, nor did the judgment providing for its enforcement.

Assuming, however, for the purposes of argument, that in this proceeding the state of New York has a standing to reach the fund as personalty, and it were possible for the state to question the validity of the purchase of the property by Cottle and Hill as in violation of their duty to the estate they represent, nevertheless such purchases are not " *void,*" but at most " *voidable*" by the beneficiaries interested in the estate. *Harrington* v. *Erie County Sav. Bank,* 101 N. Y. 257; *Chorrmann* v. *Bachmann,* 119 App. Div. 146; *Merrick* v. *Waters,* 51 id. 83; affd., 171 N. Y. 655.

A failure of a party having the right to institute an action to set aside such a purchase by executors or trustees must be taken within the statutory time allowed, or the protection of such an action will be barred. In this case the statutory limitation is ten years. See Code Civ. Pro. § 388. By section 389 the state is made subject to the same limitation as an individual so far as such actions relate to personalty. If the action were one for the recovery of realty the limitation is forty years. If the state has any standing at all it is to set aside the purchases by Cottle and Hill, and the ten-year statute must be deemed to apply. The

fact is that the sale or purchase which is questioned was had in November, 1898. This proceeding was commenced by the New York Central and Hudson River Railroad Company in February, 1914, more than fifteen years after the sale to Cottle and Hill had been made. It would seem, therefore, that if the state ever had standing to question the purchase by Cottle and Hill, that right had been lost by the lapse of time, and the Statute of Limitations would be a complete bar to its assertion at this hour. The right to question such purchases may be lost and the sale confirmed as well by acquiescence and lapse of time as by express act. *Harrington* v. *Erie County Sav. Bank,* 101 N. Y. 257.

The question still remains, does the evidence produced show that the state has or ever had any interest in the particular fund, or generally in the distribution of the personal property left by the testator, John J. P. Read? By the will of Read he provided for the payment of certain legacies. It may possibly be that after the payment of the debts of the decedent, the expenses of administration, and the legacies given, the state would become entitled to receive the surplus, provided it should be made to appear in a proper proceeding that the testator left no next of kin to take.

In *Johnston* v. *Spicer,* 107 N. Y. 185, it was held in substance that all rights of property, of whatever nature, revert to the people when the owner dies intestate and there is a failure of heirs or next of kin to take such property; and there is no essential difference between real and personal property, although the doctrine of escheat applies only to real property.

The question presented (outside the objection of the bar of the Statute of Limitations) is whether the evidence in this case establishes the fact that John J. P. Read did in fact die without leaving next of kin capable of taking his unbequeathed personalty. What

might be sufficient to support an escheat of real property to the people might be quite insufficient to support reversion of personal property. As to real property non-resident aliens are incapable of taking. Therefore to establish an escheat of real property it would be sufficient for the state to show that Read died without leaving lawful heirs capable of inheriting notwithstanding he might still have left relatives who might take as next of kin upon a distribution of personalty. There exists no restriction or prohibition against aliens taking a distributive share of personalty. The evidence given before the referee shows that the father of John J. P. Read was English, and came to Buffalo between 1832 and 1834, and died in Buffalo in 1851, when John J. P. Read was about eighteen years of age. It is quite unlikely, therefore, that Read knew much about his father or mother's relatives. It is more than probable, however, that his father on coming to this country from England left relatives in the old country, and it is most improbable that there are none living who, if known, would not take as next of kin of the deceased. Indeed the presumption of law is that a person does not die without heirs or next of kin. 22 Am. & Eng. Ency. of Law, 1291; *Seitz* v. *Messerschmitt,* 117 App. Div. 406.

Consequently the burden of showing that Read left no next of kin rested on the state. The state offered no evidence of any attempt to find any heirs or next of kin. There is no proof of any efforts to find next of kin in England, where such probably would be living. The case of the state in that respect seems to have rested on a statement made by Hill upon information and belief that Read had left no heirs, and in Cottle's petition that he had no knowledge or information sufficient to form a belief as to an heir-at-law of the deceased, and the testimony of a member of the family with whom

Read lived for years that she never knew or heard of such next of kin or heirs. The referee was of the opinion that in view of the statements and by reason of the lapse of time between Read's death and the hearing, and that no one had appeared to claim his estate, he was justified in concluding that Read in fact left no heirs. The referee may be right so far as it relates to heirs-at-law capable of taking real estate, but I think the state did not overcome the presumption of law as to there being next of kin, possible residents of England, from which country Read's father came to America.

It seems to me that the presumption that Read in fact left next of kin capable of taking personalty has not been overcome by the evidence produced. In any event, the court has reached the conclusion that the fund in court must be deemed personalty, so far as those interested in the Read estate are concerned, that if any right to question the sale and conveyance to Cottle and Hill ever existed it is now barred by the Statute of Limitations, and that the state must fail in its claim to the fund.

These considerations make it unnecessary for the court to discuss many other questions raised and urged in opposition to the confirmation of the referee's report, involving the legal force and effect of the will and codicil of John J. P. Read as to the disposition of the testator's real estate, and as to the lien and validity of certain taxes assessed against the property subsequently to the testator's death, followed by tax deeds. The learned referee, having found the property escheated to the state, found also as a consequence that being state property it could not be assessed for purposes of general taxation, and therefore the taxes, sales and conveyances were void. It is sufficient to say that if the assumptions of the referee are wrong as to

the escheat, his conclusion as to the validity of such taxation also fails. It is manifest, we think, that if the West Shore Railway condemnation proceedings are to be treated as tantamount to a sale, and the bare technical legal title was vested in Read as trustee for the purchaser, the West Shore Railway Company, then the beneficiary title was in the West Shore Railway Company, and the land subject to general taxation, and it became the duty of that company to pay and discharge such taxes as between itself and Read, and in no event can it be said that the taxes imposed and sales made and tax deeds given were illegal and void because the property belonged to the state by reason of an escheat.

It only remains for the court to indicate the form of the order to be entered.

An order should be drawn in accordance with the stipulation of the parties defendant other than the state, denying confirmation of the report, and directing the fund in court to be paid one-half to the so-called Cottle interests and one-half to the so-called Hill interests and that the mortgage to the defendant Munro be satisfied out of the Hill interests.

Ordered accordingly.