JOSEPH PERSICO and Others, Plaintiffs, *v.* HATTIE L. GUERNSEY and Others, Defendants.

Supreme Court, Erie County, March 24, 1927.

Vendor and purchaser — action to recover back payment on purchase price — buildings were damaged by fire — purchaser in possession must bear loss — delay of vendors in making repairs not ground for rescission — proceeds of insurance taken out by vendors, on which purchasers paid premium, is trust fund for benefit of parties — infancy of one of vendors does not release other vendors or affect rule as to liability of purchaser for loss by fire.

In an action by the purchasers of real property to recover back a sum paid on the purchase price and for taxes, insurance and other expenditures, a delay by the vendors in making repairs to buildings on the premises damaged by fire after the purchasers had entered into possession, is not a ground for rescission, since any loss incident to the fire was a loss of the purchasers except in so far as they were protected by insurance, and if the vendors did more than they were under legal obligation to do, any delay on their part cannot be a ground for rescission.

The proceeds from insurance policies on the premises, taken out by the vendors, on which the purchasers paid the premiums, paid to the vendors after the fire, must be deemed a trust fund for the benefit of the purchasers as well as for the benefit of the vendors, and should be applied to the cost of the repairs made by the vendors and the balance credited on the purchase price of the property.

The fact that one of the vendors, at the time of the execution of the contract to sell, was a minor, does not prevent the purchasers from compelling a specific performance of the contract.

Nor does the fact that the fire occurred before said minor reached her majority take the case out of the general rule, to the effect that purchasers in possession assume the risk of loss to the property by fire, since the conveyance was not to be made until the minor became of age.

ACTION by vendee to recover down payment.

*Stephen V. O'Gorman,* for the plaintiffs.

*William E. Barrett,* for the defendants.

CHARLES B. WHEELER, Official Referee.    This action is brought to recover $1,000 paid on the purchase price of certain real property in the city of Buffalo, and for certain other items set forth in the complaint.

The defendant Hattie L. Guernsey appears to have been the owner of an undivided half of the property sold.   Geraldine B. Smith, Alice E. Gates, Marjorie H. Smith and Ruth L. Smith were the owners of the other undivided half.   So far as I can discover, the defendant William J. J. Smith had no interest in the property in question at the time the contract to sell was made, but in June, 1926, purchased and became the owner of the undivided half interest of Hattie L. Guernsey, which was prior to the commencement of this action.   He was the father of Geraldine, Alice, Marjorie and Ruth, and executor of their mother's will under which his daughters acquired title to their undivided half.   On July 1, 1925, the owners of the property entered into a written contract with the plaintiff Joseph Persico and one Guiseppe Rosato, and by which they agreed to sell and Persico and Rosato agreed to buy the property in question.

Although the defendant Marjorie Smith signed the contract it was well understood that at the time she was a minor, and would not attain the age of twenty-one years until the twenty-eighth day of December following.   It was accordingly provided in the contract that the deal should not be closed and the deed given until said twenty-eighth day of December.   It was, however, agreed by the terms of the contract that the vendees should go into possession of the premises, pay taxes, etc., and on the defendant Marjorie reaching her majority the sale should be closed.   The vendees paid on the purchase price $1,000.   The balance of $3,500 was to be secured by a purchase-money mortgage as in the contract provided.   The vendees went into the actual possession of the premises sold.

On October thirtieth, however, the house on the premises was so damaged by fire as to be rendered untenantable and the vendees moved out and have not since occupied the premises.   It appears the vendors had procured two policies of fire insurance on the building by which they were insured in their own names against loss to the amount of $3,900.   The premiums on these policies were paid by the vendees at the request of the vendors although the written contract is silent as to who should pay such premiums.   The vendees obtained for themselves a third policy on the building for $1,000 by which they were insured against loss in their own names. After the fire proofs of loss were made to the insurance companies,

Supreme Court, March, 1927.                [Vol. 129

and the adjusters fixed the damage at $1,455.99, which was apportioned among the policies, $296 being apportioned to the $1,000 policy issued to the vendees, and $1,159.99 to the two policies issued to the owners. The insurance companies, however, did not at once pay the loss, raising objections to such payment on the ground that they had not been advised of the real interest of the parties insured by reason of the contract of sale made. This led to negotiations and finally on or about July 1, 1926, the two companies issuing policies to the vendors paid them the amount of loss apportioned to such policies, to wit, the sum of $1,159.99. The insurance company issuing the policy to the vendees drew its draft for $296 payable to all the parties, both to the vendors and vendees, but this draft has never been cashed, and is in the hands of the vendors or their agents, the vendees for certain reasons refusing to indorse such draft or surrender their policy, claiming the loss should be paid to them alone.

The attorney for the vendees called on the vendors to repair the damaged building. Not receiving the insurance moneys they did nothing in the way of repairs until April or May, 1926. They did then begin repairs, but Mr. Persico objected to the manner in which it was being done and insisted it should be done to his satisfaction. Nevertheless the necessary repairs were made, and the evidence is that the building was properly repaired, and when the repairs were completed was in a better condition than before the fire. These repairs cost $1,076.05, some $379.94 less than the amount of damage fixed by the adjusters, and $83.94 less than the amount received by the vendors on their policies.

Guiseppe Rosato, one of the vendees, died on or about December 4, 1925, intestate, leaving his widow, Adeline Rosato, and two infant children as his heirs at law and next of kin, and Adeline Rosato has been duly appointed administratrix of the estate of her deceased husband.

This action is brought to recover the $1,000 paid on the purchase price of the premises and for taxes, insurance and other expenditures made by the vendees. The question is, have the plaintiffs made out a cause of action? The solution of this question turns, we think, on the relation and legal obligations established between the parties by virtue of the contract of sale entered into by them. When the contract was made the vendees became the equitable owners of the property agreed to be purchased. (*Williams* v. *Haddock,* 145 N. Y. 144; *Beckrich* v. *City of North Tonawanda,* 171 id. 292, 300; *Lewis* v. *Smith,* 9 id. 502; *Smith* v. *Gage,* 41 Barb. 60; *Moore* v. *Burrows,* 34 id. 173; *Johnson* v. *Corbett,* 11 Paige, 265; *N. Y. C. & H. R. R. R. Co.* v. *Cottle,* 102 Misc. 30;

*Occidental Realty Co.* v. *Palmer,* 117 App. Div. 505, 506; *Moore* v. *Taylor,* 175 id. 37; *Matter of Boshart,* 107 Misc. 697.)

The vendors hold title as trustee for the vendees, and as security for the payment of the balance of the agreed purchase price. (*Williams* v. *Haddock, supra; Beckrich* v. *City of North Tonawanda, supra; Lewis* v. *Smith, supra; Smith* v. *Gage, supra; Moore* v. *Burrows, supra; Johnson* v. *Corbett, supra; N. Y. C. & H. R. R. R. Co.* v. *Cottle, supra; Occidental Realty Co.* v. *Palmer, supra; Moore* v. *Taylor, supra; Matter of Boshart, supra.*)

The interest of the vendors in the property is deemed in equity personalty not realty. (*Williams* v. *Haddock, supra; Beckrich* v. *City of North Tonawanda, supra; N. Y. C. & H. R. R. R. Co.* v. *Cottle, supra; Matter of Boshart, supra.*)

On the other hand, the interest of the vendees by virtue of the contract is deemed realty and in the event of the death of either goes to his heirs at law and not to his executors. (*Moore* v. *Burrows,* 34 Barb. 173, 174; *Champion* v. *Brown,* 6 Johns. Ch. 398; *Griffith* v. *Beecher,* 10 Barb. 432; *Rood* v. *N. Y. & Erie R. R. Co.,* 18 id. 80, 83; *Palmer* v. *Morrison,* 104 N. Y. 132, 138; *Abate* v. *Bianco,* 143 App. Div. 511, 512; *Stewart* v. *Long Island R. R. Co.,* 102 N. Y. 601, 624; *Hathaway* v. *Payne,* 34 id. 92.)

It is a further rule of law that a vendee in possession must bear any loss which may happen to the estate purchased between the agreement to purchase and the time of conveyance. (*Rood* v. *N. Y. & Erie R. R. Co.,* 18 Barb. 80, 83, and cases there cited; *Sewell* v. *Underhill,* 197 N. Y. 168.)

It follows, therefore, that when the building on the premises sold was burned any loss incident to the fire was the loss of the vendees, saving, of course, so far as they were protected by fire insurance.

The risk was the vendees' risk, and not the risk of the vendors. Consequently the vendees could not legally call on the vendors to restore the building to its former condition, and a failure or refusal to make repairs gave no grounds for a cancellation of the contract to purchase. It was primarily the duty of the vendees to repair. Their obligation to pay the purchase price still remained. Of course, the vendees and the vendors each had an insurable interest in the property. The vendors availed themselves of that right, and took out policies. It cannot, however, be overlooked that the vendors sustained the relation of trustees, holding the legal title to the property for the benefit of the vendees and subject to the payment of the balance of the purchase price. The evidence is undisputed that when the vendors took out insurance they

13

requested the vendees to pay the insurance and this the vendees did. So we take it that any insurance moneys paid the vendors after the fire must be deemed a trust fund for the benefit of the vendees as well as for the benefit of the vendors. This we think grows out of the trust relations existing between the parties, and the fact the vendees paid all insurance premiums. While, as we have already said, the vendors were under no legal obligation to make repairs, we think any moneys received by them on insurance they had no right to appropriate to themselves, but that it should be applied either as a payment on the purchase price, or devoted to making repairs in case they were willing to devote such moneys to that purpose at the request of the vendees. However that may be, the vendees had the right to make these repairs themselves, but they did not elect to pursue that course. They insisted on the vendors restoring the property, and to the vendees' satisfaction. Perhaps they did not understand the obligations of the vendors in that regard, and perhaps the vendors did not appreciate or understand their duties in the premises. Nevertheless the vendees looked to the vendors to make the repairs and did nothing themselves in restoring the building, on the other hand complaining to the vendors they were dilatory in not making the repairs sooner, although the legal duty to repair rested on the vendees. When, therefore, the vendors in fact did make the repairs the vendees cannot be heard to complain or question the expenditures so made. By making them under the circumstances the vendors lost none of their rights. The evidence shows, however, the repairs cost $1,076.05, which is some $379.94 less than the damage fixed by the adjusters. We think that any insurance moneys received by the vendors in excess of the $1,076.05 actually expended should be credited on the purchase price of the property for the benefit of the vendees. As matter of fact, however, owing to the neglect or refusal of the vendees to indorse the $296 check payable to all the parties, the vendors have not received that amount. Until in some way they do receive that sum they cannot be charged with it, or made accountable for it.

It has been urged by counsel for the plaintiffs that Marjorie Smith, one of the vendors at the time of the execution of the contract to sell, was a minor, and by reason of that fact legally incapacitated from making any valid contract; that, therefore, the vendees were in no position to compel a specific performance. It is true that it was within the power of Marjorie Smith to repudiate the contract on her part and to refuse to perform. She, however, had the right on attaining her majority to ratify it, and although long since of age has never repudiated or disaffirmed it.

In fact counsel for the vendors asserted on this trial they stood ready to convey and fulfill the contract of sale.

The referee is of the opinion that the plaintiffs are in no position to allege the minority of Marjorie Smith. Contracts made with infants are not as a rule void, but simply voidable at the election of the infant. The defense of infancy is personal to the infant and not available to the other party to the agreement. (Clark's New York Law of Contracts, § 737, and cases cited; *Casey* v. *Kastel*, 237 N. Y. 305.)

Certainly in no event would the infancy of one of the vendors release the other vendors from their obligations on the contract. If the minor repudiated, while they might not be able to give good title they still would remain liable for damages for a failure to give good title. The contract is not void. However, the minor in this case is now of full age and stands ready to fulfill.

It is urged too that inasmuch as Marjorie Smith was a minor, and the fire occurred before she reached her majority, that fact takes the case out of the general rule laid down to the effect that vendees in possession under a contract to purchase assume the risk of disaster to the property such as fire. The contract between the parties was not impossible of performance in full. The conveyance was not to be made until the minor became of age. If the vendors were ready and willing to convey good title at that time they met all the conditions of the agreement to sell. It is not contended the vendors were not willing or ready to convey at the time specified for closing. They assert they are now ready to carry out the contract.

The case of *Brownell* v. *Board of Education* (239 N. Y. 369), cited by plaintiffs' counsel, is not in point. In that case the vendor of real property remained in possession of the property agreed to be sold, and agreed to convey at a future date the premises " in as good condition as they now are." A fire occurred which made it impossible for the vendor to comply with this condition, and it was held that under the circumstances the vendee was entitled to recover the payment made on the execution of the contract.

In the case now before the referee possession was given, and we are aware of no authority in this State which departs from the rule that under such circumstances loss by fire or other casualty falls on the vendee.

The referee is unable to discover any fact shown in this case which has put the vendors in any way in default on their contract to sell and convey, and without such facts there is in our opinion no basis of recovery by the plaintiffs. The complaint alleges that the defendants neglected to repair the buildings damaged by the

fire and to restore them to the condition they were in prior to the fire, whereupon the plaintiffs by due notice to the defendants canceled and rescinded said agreement on their part and demanded payment for their damages.

The entire cause of action seems to be predicated on the refusal of the defendants to repair and the neglect to do so at once gave plaintiffs the right to rescind. However, we have seen that by the authorities cited that duty did not rest on the defendants, although as matter of fact the defendants did repair. If the defendants did more than they were under legal obligations to do any delay on their part to do what they were not obligated to do cannot be made any ground for rescission. We have, therefore, reached the conclusion the plaintiffs have failed to make out a case and are not entitled to recover in this action.

We have discussed the questions involved in this case at some length, pointing out the rights and obligations of the parties as we understand them, with the view that the parties may eventually agree to an amicable settlement of their differences when the views of the referee are made known.

The referee urged this on counsel before the case was finally submitted to him, and hopes that even now the parties may reach a just and equitable adjustment.

The plaintiffs' complaint is dismissed. So ordered.