OPINION OF THE COURT
C. Raymond Radigan, J.
The decedent, Mildred Cahill, died on March 6, 1996 survived by a spouse, Austin Cahill, and six children, Joan Dunn, Martin Cahill, Eileen Cahill, Marie Morgan, David Cahill and Janet *703 Cahill. Under the terms of decedent’s 1967 will, which was admitted to probate on waivers and consents, the entire estate was bequeathed to decedent’s spouse Austin, who was also named executor.
An initial review of the estate showed that it contained no liquid testamentary assets, but instead consisted entirely of joint accounts, Totten trust accounts, life insurance and a family home owned with Austin by the entirety. There are also allegations that the estate received a distribution as a legacy from a predeceased relative and that one of the children, Janet Cahill, received a $16,000 loan from the decedent. If these allegations are verified, together they would constitute the entire testamentary estate.
Following the issuance of letters testamentary to Austin Ca-hill, he executed and filed with the court a notice of election pursuant to EPTL 5-1.1-A. He apparently presented to his children, who were the beneficiaries of certain testamentary substitutes, his calculation as to what their proportionate contributions to his elective share should be. Apparently, all of the nontestamentary beneficiaries were satisfied with the calculations except Janet Cahill, who refused to make any contribution towards the elective share despite the fact that she received the proceeds of a joint account with the decedent ($16,257.63) and part of a Totten trust account ($24,832.69).
Thereafter, Janet Cahill petitioned this court for a decree:
(i) determining that Austin Cahill is not entitled to an elective share under EPTL 5-1.1-A;
(ii) declaring invalid the election of Austin Cahill;
(iii) vacating the notice of election filed by Austin Cahill on August 20, 1996;
(iv) granting costs to the petitioner.
From the allegations in the petition, it is clear that there is no basis to grant part of the requested relief. It is uncontested that Austin Cahill was married to Mildred Cahill at her death. It is also uncontested that he filed his notice of election within the statutory period, which notice of election appears valid on its face. Accordingly, there is no basis to either vacate the notice of election or declare it invalid. The actual relief requested by petitioner, although imprecisely stated, is for a determination that the elective share, whatever it calculates to be, has already been satisfied through the receipt by Austin Cahill of testamentary and nontestamentary assets in his favor.
In the pleadings filed by petitioner and her respondent father, only two issues are raised, both of which have a bearing *704 on whether there is an elective share and what is electable. The principal issue is whether the family dwelling in Syosset, New York, which was owned by the decedent and Austin Ca-hill as tenants by the entirety, is a testamentary substitute. If it is found to be such, then the elective share will be rendered satisfied by charging one half of the value of the home ($275,000) against the gross elective share of Austin Cahill. If the home is not considered a testamentary substitute as defined by EPTL 5-1.1-A, then Austin will have a limited right to elect against other testamentary substitutes, including those in favor of Janet Cahill. The actual calculation of such share cannot be determined on the information presently before the court.
The second issue raised in the pleadings is whether the funds in account No. 805-35597004 at the Long Island Savings Bank in the joint names of the decedent and Janet Cahill represent a loan to Janet Cahill or are the result of a gift from the decedent to Janet when the account was opened. There is no documentary evidence in the record to suggest that the presumption set forth in Banking Law § 675 that the survivor of this account, namely Janet Cahill, is entitled to the proceeds on death, has been overcome.
If in fact the decedent loaned $16,000 to her daughter Janet which funds were placed into the Long Island Savings Bank account, then such determination per force requires a finding that the entire funds in the account were deposited by Janet and therefore not subject to a right of election (EPTL 5-1.1-A [b] [2]), although Janet would be obligated to repay such loan. In the event that no loan obligation is established, then the Long Island Savings Bank account still becomes the property of Janet, subject to contribution to an elective share yet to be determined.
Following discovery on these issues, the petitioner moves for summary judgment declaring:
(1) the real property in Syosset, New York, owned as tenants by the entirety is a testamentary substitute under EPTL 5-1.1-A thus satisfying the elective share;
(2) invalid the notice of election and vacating the notice of election;
(3) that a distribution from the estate of Helena Steimer in the approximate sum of $13,821 should be included in the testamentary estate;
(4) that Janet Cahill is entitled to the proceeds of Long Island Savings Bank account No. 805-35597004;
*705 (5) sanctioning respondent under 22 NYCRR 130-1.1;
(6) costs of this proceeding.
For the reasons stated previously the second branch of the requested relief must be denied. The issue is not whether the notice of election is valid or invalid but rather whether it has any effect. The third branch of the motion must also be denied as the relief requested here is nowhere mentioned in the underlying petition and is not part of any joined issue. If the first item of requested relief is not resolved in movant’s favor then a right of election will exist, the actual amount of which can be determined in an accounting.
With regard to the fourth branch of the motion for summary judgment, it must be denied at this time. Summary judgment involves a process of issue finding, not issue determination and may not be granted in the presence of the existence of a triable issue of fact (Palmerton v Envirogas, Inc., 80 AD2d 996). While it is true that the bank account in question at Long Island Savings Bank is entitled to all the statutory presumptions of survivorship under Banking Law § 675, an issue of fact as to ownership has been raised by the executor. It is the position of the executor that the Long Island Savings Bank account was pledged by Janet Cahill as security for a loan she received to purchase a car. The executor states in his affidavit in opposition to the motion that “subsequent to the decedent’s death (Janet Cahill) admitted to respondent that the account was set up solely as collateral for a loan and was to remain the property of the decedent in spite of the form of the title of the bank account. After the loan was paid, the account was to revert back to the decedent.” Needless to say, Janet Cahill completely denies making such an admission.
In his deposition, the executor admits that there is no documentary evidence of any loan by the decedent to Janet Ca-hill. Neither did the decedent ever tell him that Janet Cahill was indebted to her in any amount. While there are factual events in the record that appear to be inconsistent with the executor’s delayed claim that the Long Island Savings Bank account was to be collateral for a loan, nevertheless, if his testimony about his daughter’s admission is accepted by the court as true and accurate, it would be the basis to order the return of those funds to the estate. This factual issue can only be determined at a plenary hearing.
With regard to the branches of the motion requesting sanctions under 22 NYCRR 130-1.1 and costs, they are denied at this time without prejudice to renewal. If the court finds the *706 executor’s position vis-á-vis this Long Island Savings Bank account to lack credibility to the point of being frivolous, then sanctions and costs may be awarded.
The first and foremost branch of the motion, upon which all other issues depend, is also a matter of first impression. The facts on this issue are undisputed. The decedent and her husband entered into a contract on April 28, 1966 to purchase a parcel of land in Syosset, New York, upon which a home was to be built. The purchase price of $36,000 was to be paid in installments with $30,000 to be financed by a mortgage. The buyers gave a $1,000 deposit upon the contract signing and three other payments of $1,000 around April 15, 1966, May 28, 1966 and June 15, 1966. The closing of title took place on November 17, 1966 at which time a deed granting the fee title to Austin Cahill and the decedent was executed. This deed was recorded on November 21, 1966.
The timing of these events carries great significance. Under EPTL 5-1.1-A (b) (1) (E), the gross estate for purposes of the right of election will include as a testamentary substitute: “Any disposition of property made by the decedent whereby property, at the date of his or her death, is held * * * by the decedent and another person * * * as tenants by the entirety where the disposition was made after August thirty-first, nineteen hundred sixty-six” (emphasis added). The term “disposition” is defined in EPTL 1-2.4 as “a transfer of property by a person during his lifetime or by will.” The sole question to be answered by this court is whether the “disposition” called for in EPTL 5-1.1-A (b) (1) (E) whereby the property in Syosset was held at death by the decedent and Austin occurred before or after August 31, 1966.
Historically, parties for practicality purposes have looked to the date of the deed to determine whether a home owned as tenants by the entirety was a testamentary substitute. The statute, however, makes no mention of the “date of the deed” as being determinative of the issue. In fact, the deed in question represents a transfer “to” the decedent rather than a transfer of property “by” the decedent as required by the statute. In short the court must look for a transfer “by” the decedent whereby the property in question came to be owned by Austin Cahill and the decedent by the entirety at her death and determine whether this disposition occurred before or after August 31, 1966.
Clearly, there was a disposition of property by the decedent when she and her husband entered into the purchase contract *707 as husband and wife on March 28, 1966. They transferred $1,000 in cash plus a promise to pay the balance in subsequent cash installments and through a mortgage. While the movant herein attempts to minimize the rights of the decedent and her husband Austin at the signing of the contract, they were in fact quite significant. It can be argued that the decedent and Austin became the owners of property (albeit equitable ownership) on the signing of the contract, with all the legal rights attached to such equitable ownership.
The general rule in regard to contracts for the sale of land is that the owner of the real estate from the time of the execution of a valid contract for sale is to be treated as the owner of the purchase money, and the purchaser of the land is to be treated as the equitable owner thereof, notwithstanding the words of the contract (New York Cent. & Hudson Riv. R. R. Co. v Cottle, 187 App Div 131, 144, affd 229 NY 514; Elterman v Hyman, 192 NY 113, 119; Williams v Haddock, 145 NY 144). The vendor holds the legal title in trust for the vendee and has an equitable lien for the payment of the purchase price (Trembath v Berner, 240 NY 618; 16 Carmody-Wait 2d, NY Prac § 98:2, at 503; 1 Rasch, Real Property Law and Practice § 436 [1962]).
The vendor is deemed in equity to stand seized of the land for the benefit of the purchaser who, even before the conveyance to him, can devise the same and it descends to his heirs; and the land which was agreed to be sold is turned into money belonging to the vendor. If the vendor dies prior to the completion of the bargain, provided there have been no defaults, the heir of the vendor may be compelled to convey a deed and the proceeds of the land will go to the executors as personal property (Williams v Haddock, supra). If the purchaser dies prior to the completion of the bargain, the real property descends as real property subject only to the payment of the amounts which remain unpaid under the contract (Matter of Kelleher, 133 Misc 581).
The necessary conclusion to be reached under the facts of this case is that upon the execution of the contract by the decedent and Austin Cahill on March 28, 1966 along with the delivery of the down payment to the vendor, an interest in real property by Austin and Mildred Cahill, husband and wife, came into existence by operation of law (see, Bean v Walker, 95 AD2d 70). The equitable ownership of the Syosset property obtained by the Cahills in March 1966 merged with the absolute fee ownership when the deed was executed in November 1966 but that does not lessen the ownership rights enjoyed by the *708 decedent and Austin Cahill from the date of the execution of the contract.
Accordingly, it is the finding of this court that the “disposition” of property by the decedent whereby the Syosset property was held at her death by the decedent and Austin Cahill as tenants by the entirety occurred on March 28, 1966 when the decedent and Austin Cahill delivered $1,000 plus their promise to pay the remainder of the purchase price as consideration for the contract of sale executed simultaneously therewith. Since the “disposition” of property called for in EPTL 5-1.1-A (b) (1) (E) occurred prior to August 31, 1966, the real property in Syosset, New York, which was owned by the decedent and her husband Austin Cahill as tenants by the entirety at the time of her death is exempt from inclusion as a testamentary substitute for purposes of calculating the elective share. Therefore, the first branch of the motion is denied and the respondent granted summary judgment instead (CPLR 3212 [b]), determining that the real property in question is not a testamentary substitute for purposes of calculating the elective share.
Item 3 of the motion raises an issue as to the existence of an estate asset consisting of an alleged inheritance received by the decedent which has so far in the papers not been acknowledged by the executor and which is not presently an issue before the court. Accordingly rather than proceed piecemeal to determine title to the joint bank account with petitioner, the executor will be required to file an accounting by March 31, 1998. While the executor recently suggested that if the issues concerning the realty and the joint bank account were determined, other “discrepancies” could be resolved, his earlier amended answer concluded that an accounting was necessary, a conclusion which will enable all the issues to be finalized and all the interested persons given an opportunity to be heard. A conference will be held on February 24, 1998 at 9:30 a.m. in lieu of the originally scheduled hearing date.